GANNETT ET AL., APPELLEES, *v.*
BOOHER ET AL., APPELLANTS.

(No. H-83-3—Decided June 17, 1983.)

*Mr. F. L. Bemiller* and *Mr. Jeffrey L. Molyet,* for appellants.

*Mr. William W. Owens,* for appellees.

DOUGLAS, J. This case is before the court on appeal from judgment of the Huron County Court of Common Pleas, Probate Division, wherein that court, after a will contest action tried to the court, set aside the last will and testament of Thomas Norman Gannett ("testator") executed on March 1, 1978. The trial court found the will not to be valid based on that court's findings that at the time the will was executed, the testator did not have testamentary capacity and that said will was the result of the testator having been unduly influenced.[1]

[1] It should be noted that the testator had been placed under a guardianship "by reason of mental and physical disability and infirmity" on February 14, 1978, just two weeks prior to

Appellants, as their first assignment of error, state that:

"1. The trial court erred as a matter of law by denying appellants' motion for summary judgment when appellees failed to offer any evidence to counter the evidence offered by the appellants."

The Supreme Court recently has commented in *Norris* v. *Ohio Std. Oil Co.* (1982), 70 Ohio St. 2d 1, 2-3 [24 O.O.3d 1], that:

"Summary judgment is a procedural device to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion.

"A successful motion for summary judgment rests on the two-part foundation that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. [Citations omitted.]"

Appellants supported their summary judgment motion with numerous affidavits and other evidentiary material, which, if appellees had not responded, appear to have been sufficient to support appellants' motion for summary judgment. See.*Rainey* v. *Harshbarger* (1963), 7 Ohio App. 2d 260, 264-265 [36 O.O.2d 374]. As stated in Civ. R. 56(E):

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response * * * must set forth specific facts showing that there is a genuine issue for trial. * * *"

See *Harless* v. *Willis Day Warehous-*

*ing Co.* (1978), 54 Ohio St. 2d 64 [8 O.O.3d 73]; *Alexander* v. *Buckeye Pipe Line Co.* (1978), 53 Ohio St. 2d 241, 249 [7 O.O.3d 403].

However, Civ. R. 56(C) provides that the non-moving party is entitled to have the moving party's evidentiary material construed most strongly in favor of the non-moving party. *Stemen* v. *Shibley* (1982), 11 Ohio App. 3d 263. Although the non-moving party is entitled to this favorable construction of the movant's evidence, if the non-movant does not respond, the moving party's affidavits are accepted as true. *Stemen, supra; Jones* v. *Halekulani Hotel, Inc.* (C.A. 9, 1977), 557 F. 2d 1308, 1310.

Appellants do not dispute that appellees responded by affidavit to appellants' motion for summary judgment and the evidentiary material submitted in support thereof. Appellants do contend, however, that the affidavits submitted by appellees were not sufficient to counter the evidentiary material which appellants had submitted in support of their motion. Appellants' evidentiary material consists of affidavits from the testator's housekeeper, the attorney who drafted the will, and the witnesses who were present on March 1, 1978, when the testator executed the will. Essentially, each of these affidavits states that, based on the affiant's personal observations, the testator knew of his property and of his children, and that the testator was able to discuss both of these clearly and intelligently. In direct contrast to these affidavits submitted by appellants are the affidavits submitted by appellees. These affidavits, with appellees as affiants, state that the testator "was unable to comprehend the nature and extent of his property, did not know on numerous occasions the members of his family when they came to

the testator executing the will in question. (See plaintiffs' Exhibit 1.) Also, testator had testified at the guardianship hearing. The same trial judge who heard the guardianship matter

and entered the guardianship order also heard the case now before us, to wit: the action to set aside the will of testator dated March 1, 1978.

visit or their relationship to him." The affidavit of the testator's grandson stated that on many occasions when the grandson had visited the testator, the testator "appeared to be out of touch with reality" and that the testator did not know the grandson. Appellees also submitted the affidavit of the testator's neighbor, who stated that on several occasions the testator's perception "would fade in and out."

Obviously, from examining the affidavits submitted by both appellants and appellees, the testator's mental capacity was put directly and squarely in issue. Appellees' affidavits are precisely the type contemplated by the Supreme Court in *Harless, supra,* at 65, by this court in *Stemen, supra,* and by Civ. R. 56(E). Thus, based on the affidavits presented, there existed a genuine issue of material fact concerning the testator's capacity, and summary judgment would not have been proper. Accordingly, appellants' first assignment of error is found to be not well-taken.

As their second assignment of error, appellants state:

"2.  The trial court erred by allowing a witness to give an opinion as to the ultimate issue in the case when the witness has not been proffered or qualified as an expert and when the opinion given by the witness is outside the specialized knowledge of the witness."

The test in determining the admissibility of the testimony of a witness offered as an expert is whether that witness will aid the trier of fact in search of the truth (see *Ishler* v. *Miller* [1978], 56 Ohio St. 2d 447, 453 [10 O.O.3d 539], and Evid. R. 702), rather than whether the expert witness is the best witness on the particular subject. *Alexander* v. *Mt. Carmel Medical Center* (1978), 56 Ohio St. 2d 155, 159 [10 O.O.3d 332]. Considering

this test, we recognize that the opinion of a physician concerning questions of mental strength or weakness is competent in cases where those matters are in issue. *Vetter* v. *Hampton* (1978), 54 Ohio St. 2d 227, 230 [8 O.O.3d 198]. The weight to be given this evidence, however, should be determined by the trier of fact just as it determines the weight to be given the testimony of other witnesses. Further, "[t]he testimony of a physician as to mental competency is not necessarily conclusive * * * 'as a matter of law.' "[2] *Hampton, supra,* at 230; *Bahl* v. *Byal* (1914), 90 Ohio St. 129, 135-136.

The expert witness herein, Larry L. Hadley, M.D., testified that he was the testator's physician from June 1968 through February 1981, a period of nearly thirteen years. During this time, Dr. Hadley acquired his complete knowledge and familiarity with the physical and mental condition of the testator. As such, Dr. Hadley was competent to give his opinion regarding the mental state and condition of the testator. *Bahl, supra,* at 135-136.

In the instant case, as in *Bahl, supra,* the doctor fully described the gradual, well-defined, and constant decline in the mental and physical powers of the testator. Likewise, as in *Bahl, supra,* the doctor had the opportunity to observe the testator's mental condition, as the doctor was the testator's treating physician over a significant period of time. As such, it is clear that Dr. Hadley was competent to testify as to the mental state and capacity of the testator.

Appellants also contend that the question posed to Dr. Hadley and the answer which Dr. Hadley gave to that question were prejudicial and not permitted by the Ohio Rules of Evidence. We disagree. Appellants essentially pose two arguments in support of their contentions: (1) that absent an actual proffer in the record of Dr.

---

[2] See *Althans* v. *Althans* (App. 1930), 32 Ohio Law Rptr. 400, for the proposition that the testimony of lay witnesses concerning the mental capacity of the testator may be more reliable than an expert's testimony based on hypothetical questions.

Hadley's medical expertise, and absent a specific finding of fact or conclusion of law by the trial court categorizing Dr. Hadley as an expert witness, it was prejudicial error to allow Dr. Hadley to testify to the ultimate issue; and (2) that since Dr. Hadley's education, training, and experience were in the medical rather than legal discipline, Dr. Hadley was not qualified to answer the question posed to him.

We begin our analysis by simply stating that upon our review of the transcript, Dr. Hadley testified concerning his education, training, and experience. The qualifications which Dr. Hadley presented to the court, we believe, were sufficient to qualify him as an expert witness, as he possessed some superior knowledge not possessed by the trier of fact (see *State Auto. Mut. Ins. Co.* v. *Chrysler Corp.* [1973], 36 Ohio St. 2d 151, 159-160 [65 O.O.2d 374]), and which was acquired by study of recognized authority and experience. *Chrysler Corp., supra,* at 160; *Bronaugh* v. *Harding Hospital* (1967), 12 Ohio App. 2d 110, 114 [41 O.O.2d 185]. Thus, as Dr. Hadley possessed specialized knowledge which would have assisted the trier of fact to understand the evidence or to determine a fact in issue, Evid. R. 702 permitted Dr. Hadley to testify in the form of an opinion.

Further, however, even if Dr. Hadley had not testified as an expert, but rather as a lay witness, Evid. R. 701 permits opinion testimony if such testimony is rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. After reviewing Dr. Hadley's testimony, it is abundantly clear that his opinion was rationally based on his personal observations and perceptions and that his testimony was helpful in determining a fact in issue. Accordingly, Dr. Hadley, whether testifying as an expert or lay witness, was properly permitted by the court to give opinion testimony in this matter.

The next question with which we are faced concerns the scope of the opinion testimony which Dr. Hadley was permitted to give. Appellants assert that Dr. Hadley's opinion testimony usurped the function of the trier of fact, notwithstanding the permissiveness of Evid. R. 704, which states:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

Initially, we note that Evid. R. 704 does not contemplate only expert opinion testimony, but encompasses lay witness opinion testimony as well.[3] See Evid. R. 701; cf. *Shepherd* v. *Midland Mut. Life Ins. Co.* (1949), 152 Ohio St. 6, 11-12 [39 O.O. 352]. See, also, McCormick on Evidence (2 Ed. Cleary Ed. 1972), Sections 11-12, 22-29. We also recognize that the abolition of the "ultimate issue" rule by Evid. R. 704 does not, however, render all opinions admissible. An expert may not offer an opinion which embraces the "ultimate issue" if that opinion is essentially a bare conclusion significantly lacking in supporting rationale. *Tabatchnick* v. *G. D. Searle & Co.* (D.N.J. 1975), 67 F.R.D. 49, 55. Further, Evid. R. 704 does not magically render admissible expert opinion testimony on the ultimate issue if such testimony is not otherwise admissible under Evid. R. 702 and 403. *Zenith Radio Corp.* v. *Matsushita Elec. Indus. Co., Ltd.* (E.D. Pa. 1980), 505 F. Supp.

---

[3] As the Advisory Committee's Note to Fed. R. Evid. 704 states in relevant part:

"The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact. In order to render this approach fully effective and to allay any doubt on the subject, the so-called 'ultimate issue' rule is specifically abolished by the instant rules."

1313, 1331. By requiring opinion testimony concerning the ultimate issue to conform to Evid. R. 702 and 403, ample assurance is afforded against opinion evidence being admitted which would merely inform the trier of fact of what result to reach. See Advisory Committee's Note to Fed. Evid. R. 704.

To illustrate the above statement, McCormick, *supra,* at 29, uses the example of a will contest action:

"The problem has arisen often in relation to testimony on the issue of capacity to make a will. Thus, a court taking the view that there may be opinion upon an ultimate issue would approve a question, 'Did X have mental capacity sufficient to understand the nature and effect of his will?' but would frown on the question, 'Did X have sufficient mental capacity to make a will?' because the latter question may be incorrectly understood by the witness and the jury if they do not know the law's definition of 'capacity to make a will.' But a court which prohibits generally opinions on the ultimate issue would condemn both forms of questions, or even one where the questioner breaks down 'testamentary capacity' into its factual elements as legally defined. Similar problems may arise in respect to such issues as undue influence, total and permanent disability, negligence and the like."

See, also, Advisory Committee's Note to Fed. R. Evid. 704 and Staff Note to Evid. R. 704.

The question asked of Dr. Hadley, over objection, in the instant case was:

"* * * I asked you if based on your history and finding, and your years of treatment, and your medical expertise and training, do you have an opinion to a reasonable medical probability, that on March 1st, 1978, Thomas Norman Gannett had sufficient mind and memory, to first of all, to understand the nature of the business in which he was engaged, in which I'd advised you was, the making of a Will in which there was a major change as far as the despositive [sic] procedures in there, and I showed you a copy of the Will, Plaintiffs' Exhibit Eight, okay, and you answered you had an opinion, didn't you?"

Our reading and understanding of the above question aligns it more closely to the former question which McCormick poses, *supra,* rather than the latter, and on that basis, we deem that the question was a proper one to be asked of Dr. Hadley. The above question is most certainly distinguishable from one which simply asks the witness whether or not the testator possessed sufficient mental capacity to make a will.[4]

Finally, we note that Dr. Hadley, in giving his opinion, stated:

"My opinion is that the mental act of changing a will requires more substance than Norman had at that moment, and by moments of clarity, prolonged moments of clarity, I mean a period of three or possibly five minutes in which a reasonable conversation could take place between two individuals talking about relatively simple matters, but the provisions of a will change to me require a, extensive thought and they require the ability to

---

[4] We do recognize, however, that the question "Do you have an opinion if she was sound and capable of making a will," was asked of a probate judge who was familiar with the testator and was called as an expert witness in *In re Estate of Seelig* (1981), 2 Ohio App. 3d 223, 224. This question is remarkably close to the second question posed by McCormick, *supra,* as it addresses the precise issue of testamentary capacity and seemingly is not proper, notwithstanding Evid. R. 704. We do suggest, however, that the reason for not permitting questions regarding legal criteria and calling for legal conclusions to be asked of witnesses (that reason being the possibility, if not probability, of misinterpretation of the legal standard by the witness) was not present in *Seelig, supra,* as the witness was a probate judge whom this court stated possessed superior qualifications in the mental health area. *Seelig, supra,* at 225.

make judgments. You make judgments by sifting the evidence on both sides, and then using logic and common sense picking what you choose, what you think is the correct course, that mental ability was not present in Norman Gannett after his June, 1976, insult."

Admittedly, Dr. Hadley's answer is not responsive to the question posed to him, that question simply being whether the testator was of sufficient mind and memory to understand the nature of the business in which the testator was engaged. That question called for a simple "yes or no" answer. However, from our review of the transcript, the objection raised at trial was to the question asked of Dr. Hadley, which we have determined to be proper. Further, trial counsel did not object to Dr. Hadley's response nor did counsel move to have Dr. Hadley's response stricken from the record. Therefore, having done neither of the above, appellants' objections to Dr. Hadley's response were not preserved, and may not now, on appeal, be raised for the first time. *Johnson* v. *English* (1966), 5 Ohio App. 2d 109, 113-114 [34 O.O.2d 229].

Accordingly, having determined that Dr. Hadley was properly qualified as an expert, that even if not testifying as an expert, Dr. Hadley, as the testator's treating physician for a sufficient period of time to become familiar with the testator's mental powers, was competent to testify and to offer his opinion concerning the testator's mental state, and that the question posed to Dr. Hadley regarding his opinion was a proper one, appellants' second assignment of error is found to be not well-taken.

As their third assignment of error, appellants assert:

"3. The trial court erred in a continuing course of erroneous rulings on objections to evidence offered by appellees."

At the outset of our discussion regarding this assignment of error, it is imperative for us to recognize that the case *sub judice* was tried to the court without a jury. Concerning appellants' arguments regarding the relevancy of the cross-examination of Attorney Blackman, we need only state that in cases tried before a judge without a jury, the trial judge is presumed to have considered only competent and relevant evidence. *In re Matter of Moyer* (Mont. 1977), 567 P. 2d 47, 49; *Guillard* v. *Dept. of Employment* (Idaho 1979), 603 P. 2d 981, 984; *Torrey* v. *Torrey* (Neb. 1980), 293 N.W. 2d 402, 406. This presumption prevails unless it is affirmatively shown that the trial judge was influenced to the prejudice of the complainor by the objected-to testimony. *Waters* v. *Humphrey* (N.C. App. 1977), 234 S.E. 2d 462, 464; *Arlington* v. *Texas Elec. Serv. Co.* (Tex. Civ. App. 1976), 540 S.W. 2d 580, 584. Such an affirmative showing has not been made with respect to Attorney Blackman's testimony on cross-examination, and therefore, appellants' argument is without merit.

Addressing ourselves to the trial court's exclusion of a certain portion of the testimony of Randy McDaniel on direct examination, we note that Evid. R. 103 states that:

"(A) * * * Error may not be predicated upon a ruling which * * * excludes evidence unless a *substantial right of the party is affected, and*

"* * *

"(2) * * * *In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer* or was apparent from the context within which questions were asked. * * *" (Emphasis added.)

As the substance of McDaniel's excluded testimony is not apparent to us, an offer of proof was needed to preserve the record for appeal. The record reveals that no such offer of proof was submitted in the trial court; therefore, Evid. R. 103 does not permit appellants to now claim error in the exclusion of McDaniel's testimony.

Finally, the trial court's ruling re-

garding Cherie Blackman's response to the question of whether the testator had the mental capacity to form the purpose and intent to dispose of his property by will, if error, was harmless, as the other witnesses to the will testified to this issue. Accordingly, appellants' third assignment of error is not well-taken.

Appellants state in their fourth assignment of error:

"4. The trial court erred by ordering an attorney to produce his file concerning his representation of a client, which file contains privileged materials and work product materials which could not even be discovered, and by allowing cross-examination of the attorney and other witnesses from these materials."

We begin our analysis of this assignment of error by noting that the record reveals that the subpoena duces tecum at issue was personally served upon Gordon A. Blackman on December 2, 1982. The trial to the court in the instant case commenced on December 6, 1982. Civ. R. 45 addresses subpoenas, and provides in pertinent part:

"(B) * * * A subpoena may also command the person to whom it is directed to produce the books, papers, documents or tangible things designated therein; *but the court, upon motion made promptly and in any event at or before the time specified in the subpoena for compliance therewith,* may (1) quash or modify the subpoena if it is unreasonable and oppressive or (2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents or tangible things." (Emphasis added.)

First, the record reveals that no motion was made, promptly or otherwise, to quash or modify the subpoena as contemplated by Civ. R. 45(B). Second, even if appellants' objections raised after the trial commenced are treated as a motion to quash or modify the subpoena, said motions were not made "promptly" nor were they made "at or before the time specified in the subpoena for compliance therewith." Prior to the production of the materials sought by the subpoena duces tecum, Gordon A. Blackman, a defendant below and appellant herein, had ample knowledge that his records were sought at trial. Appellants' failure to protect disclosure thereof by a motion timely filed pursuant to Civ. R. 45(B) is a waiver of any privilege he might now claim. See *Ross* v. *Cities Service Gas Co.* (W.D. Mo. 1957), 21 F.R.D. 34, 38.

Accordingly, we need not reach the issue of whether the requested materials were otherwise privileged. Appellants' fourth assignment of error is found to be not well-taken.

As their fifth and final assignment of error, appellants claim:

"5. The judgment of the Probate Court of Huron County that the instrument dated March 1, 1978, and admitted to probate in that court on June 9, 1981, is not the last will and testament of Thomas Norman Gannett is against the weight of the evidence and should be reversed as a matter of law and judgment should be entered in favor of that will."

Initially, we note that the order admitting a will to probate is prima facie evidence of the validity of the will. R.C. 2107.74. We further note that in light of this presumption, the burden of proof in a will contest action is upon, and never shifts from, the contestants of the will. *Kata* v. *Second Natl. Bank* (1971), 26 Ohio St. 2d 210 [55 O.O.2d 458]; *Kennedy* v. *Walcutt* (1928), 118 Ohio St. 442. To carry this burden the contestants must produce evidence which furnishes a reasonable basis for sustaining their claim. *Kata, supra,* paragraph two of the syllabus. If the evidence presented only furnishes a basis for a choice among different possibilities as to any issue in the case, the

contestants have failed in their burden of proof. *Kata, supra.*[5]

At trial, the focus of attention was directed to the standard for determining testamentary capacity as set forth by the Supreme Court in *Niemes* v. *Niemes* (1917), 97 Ohio St. 145, in paragraph four of the syllabus:

"Testamentary capacity exists when the testator has sufficient mind and memory:

"First, to understand the nature of the business in which he is engaged;

"Second, to comprehend generally the nature and the extent of his property;

"Third, to hold in his mind the names and identity of those who have natural claims upon his bounty;

"Fourth, to be able to appreciate his relation to the members of his family."

Appellees-contestants produced the testimony of Dr. Hadley, who was testator's treating physician for nearly thirteen years prior to the testator executing his last will and testament. As we stated, *supra,* the weight to be given Dr. Hadley's testimony is determined by the trier of fact just as is the weight to be given the testimony of other witnesses. *Hampton, supra,* at 230; *Bahl, supra,* at 135-136.

Dr. Hadley testified as to the mental and physical condition of the testator within a reasonable time before and after the testator executed the will.[6] See *Kennedy, supra.* Dr. Hadley further testified that he was treating the testator for cerebral vascular insufficiency, an ongoing process which interferes with the normal chemistry of the brain and continually minimizes the ability to mentally function in a normal manner. The doctor also testified that it would be possible to receive reasonably intelligent responses from the testator, but that these responses would not necessarily indicate that the testator could do simple tasks or use abstract thought. Further, Dr. Hadley stated that the testator did not possess the ability to use common sense and logic after June 1976.

We must also recognize, however, that the witnesses to the will executed on March 1, 1978, all testified that they conversed intelligently with the testator on that date, that the testator appeared lucid, and that they believed the testator to fully understand, appreciate, and comprehend the nature of his business, the extent of his property, and the members of his family. These conversations, however, lasted about twenty minutes at most and the entire meeting between attorney, testator, and witnesses was over in approximately forty-five minutes. Also, this was the first time that two of the witnesses to the will ever had any conversation with the testator.[7]

From our thorough reading of the entire record, it is our determination that contestants-appellees produced evidence which, pursuant to *Kata, supra,* furnished a reasonable basis for sustaining their claim. We realize that this determination

---

[5] This standard or quantum of proof as set forth in *Kata, supra,* appears to be greater than the standard set forth in *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279, and utilized by another panel of this court in *Seelig, supra.* That standard which *Foley, supra,* sets forth in the syllabus and which is applicable to most civil cases is:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

[6] Dr. Hadley's testimony reveals that he last saw the testator before March 1, 1978, on February 4, 1978, and first saw the testator after March 1, 1978, on April 15, 1978.

[7] The witnesses to the will were: Gordon A. Blackman, the attorney who had prepared the will; Cheryl A. Blackman, the attorney's wife; Virginia Barnett, the attorney's mother-in-law and a former legal secretary; and Marcene Schreck, a friend of attorney Blackman. Only Mr. and Mrs. Blackman had any acquaintance with the testator prior to the execution of the will.

invalidates the will of the testator. In doing so, we are indeed mindful that "[i]n our society, it is a fundamental right of every individual to be able to dispose of his property, in accordance with the law, as he deems desirable." *Kata, supra,* at 216. However, the record clearly indicates that the testator, in the case *sub judice,* was not, as required by R.C. 2107.02, of "sound mind and memory" at the time of executing the will. Having made the above determination, we need not consider appellants' second argument under the fifth assignment of error, in which appellants contend that the trial court's finding of undue influence in the preparation and execution of the will was against the manifest weight of the evidence. However, in fully complying with the spirit of App. R. 12(A),[8] we take this opportunity to briefly discuss appellants' second argument.

The elements of undue influence are set forth in *West* v. *Henry* (1962), 173 Ohio St. 498 [20 O.O.2d 119]. After thoroughly reviewing the record in the case *sub judice,* we find that the incorporation in the will executed on March 1, 1978, of an *in terrorem* clause by the drafting attorney and the fact that the drafting attorney was named as executor of the estate, do not, by themselves, rise to the level required for a finding of undue influence as set forth by the Supreme Court, in *Henry, supra.* Notwithstanding such finding, however, appellants' fifth assignment of error (which does not specifically set forth as error the trial court's finding of undue influence) is found to be not well-taken.

On consideration whereof, the court finds substantial justice has been done the parties complaining, and judgment of the Huron County Court of Common Pleas, Probate Division, is affirmed. This cause is remanded to said court for execution of judgment and assessment of costs. Costs to appellants.

*Judgment affirmed*
*and cause remanded.*

HANDWORK and RESNICK, JJ., concur.

---

[8] This court, pursuant to App. R. 12(A), is required to address in writing all errors assigned and brief. See *State* v. *Jennings* (1982), 69 Ohio St. 2d 389 [23 O.O.3d 354]; *Smith* v. *Jaggers* (1973), 33 Ohio St. 2d 1 [62 O.O.2d 168]; *Lumberman's Alliance* v. *American Excelsior Corp.* (1973), 33 Ohio St. 2d 37 [62 O.O.2d 373]. Appellants' argument regarding the trial court's finding of undue influence was not specifically assigned as error but rather was set out in argument under appellants' general Assignment of Error No. 5. We, therefore, need not discuss this issue in order to comply with this court's obligation posed by App. R. 12(A), as we have addressed in writing appellants' fifth assignment of error by our discussion of testamentary capacity.