DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Erie County Court of Common Pleas, Probate Division, denying a motion for a new trial in a will contest action. As a result of that ruling, the trial court let stand a jury verdict in favor of defendants-appellees, John A. Pfefferle, Executor of the Estate of Ruth A. Lovett, Deceased, et al., finding that the instrument dated December 6, 1989 is the Last Will and Testament of Ruth A. Lovett, deceased, and does satisfy all legal requirements of a Last Will and Testament. From that judgment, plaintiffs-appellants, Beverly Waldecker, et al., raise the following assignments of error on appeal:
 {¶ 2} "I. The trial court erred when it failed to submit interrogatories to the jury which properly tested the jury verdict.
 {¶ 3} "II. The trial court abused its discretion in excluding relevant evidence offered to rebut appellees' speculation as to appellants' motives and to impeach appellee.
 {¶ 4} "III. The trial court abused its discretion in rejecting relevant exhibits proffered by appellants during the cross examination of appellee for the purpose of impeaching appellee.
 {¶ 5} "IV. The trial court abused its discretion in excluding relevant evidence relating to the size of the testatrix's estate.
 {¶ 6} "V. The trial court abused its discretion in prohibiting questioning from appellants of appellee Humane Society which was reasonably calculated to lead to relevant and admissible evidence relevant to the testatrix's revocation.
 {¶ 7} "VI. The trial court erred when it restricted appellants from laying out the legal framework of testamentary capacity on opening and closing arguments.
 {¶ 8} "VII. The trial court committed reversible error when it denied appellants' motion for a new trial based upon a verdict which was against the manifest weight of the evidence and contrary to law.
 {¶ 9} "VIII. The trial court erred when it prohibited appellants from arguing that witnesses must attest to the four factors of testamentary capacity.
 {¶ 10} "IX. The trial court committed reversible error in giving improper instructions to the jury regarding lack of capacity to revoke a will.
 {¶ 11} "X. The trial court abused its discretion when it repeatedly made comments in the presence of the jury which were prejudicial to the appellants' case and conveyed the court's opinion of the case to the jury."
 {¶ 12} Ruth A. Lovett died on December 24, 1996. At the time of her death, her only living relatives were numerous nieces and nephews and a sister. On January 13, 1997 a document purported to be the Last Will and Testament of Ruth A. Lovett was submitted to probate. Pursuant to that will, appellee John A. Pfefferle was appointed as executor of Lovett's estate. Item III of the will, the portion at issue in this case, provides as follows:
 {¶ 13} "At the time of the execution of this, my Last Will and Testament, I acknowledge that my only living relatives are a sister, brother, nieces and nephews. As my sister, brother, nieces and nephews have no need of financial assistance from me, and [sic] I have specifically not provided for them in my Will.
 {¶ 14} "All my life I have been an animal lover and specifically have had cats as friends and companions, and therefore, all my property, whether real, personal or mixed, of whatsoever character and wheresoever situated, which I may now own or hereafter acquire, or have the right to dispose of at the time of my decease, I give, devise and bequeath to the Erie County Humane Society, 220 W. Perkins Avenue, Sandusky, Ohio 44870. I direct that the Erie County Humane Society shall out of the proceeds of my estate, pay for the proper care and veterinary service of my Siamese cat, SINBAD, for the remainder of its natural life.
 {¶ 15} "I further direct, that in the event I predecease my companion, my Siamese cat, SINBAD, that the Erie County Humane Society place it in a loving home where it will be properly loved and provided for."
 {¶ 16} Accordingly, pursuant to the terms of Item III of her will, Lovett purported to disinherit her only living relatives and left her entire estate to appellee the Erie County Humane Society.
 {¶ 17} On May 15, 1997, appellants Beverly Waldecker, George Bevier, Harriet Bevier, Frances Bevier and Katherine Boehm, the children of Lovett's deceased brother Frank Bevier, filed an action in the court below to contest the will. Appellants named as defendants in the action John Pfefferle, Executor of the Estate of Ruth A. Lovett, deceased, the Erie County Humane Society, and eight remaining relatives of Ruth A. Lovett. In the complaint, appellants alleged that the document titled the Last Will and Testament of Ruth A. Lovett was invalid because Lovett executed the document under severe pressure or influence of medication and therefore lacked testamentary capacity to execute such document.
 {¶ 18} The complaint was subsequently amended to change the parties to the action. Pursuant to that amendment, several of the relatives of Lovett who were previously named defendants became plaintiffs in the will contest action.
 {¶ 19} Prior to trial, appellees filed a motion in limine to prohibit appellants from developing evidence at the time of trial with respect to the euthanization of Sinbad the cat. Appellees asserted that Sinbad was euthanized on March 11, 1997 by a veterinarian who determined that Sinbad suffered from kidney failure. Arguing that Sinbad's care and treatment at the Erie County Humane Society had no relevance to the issue of Lovett's testamentary capacity and could be unduly prejudicial, appellees requested that appellants be prohibited from developing evidence regarding Sinbad's care and treatment. The trial court granted the motion preliminarily, holding that Sinbad's care was not relevant under Evid.R. 403. Also prior to trial, the parties and the court discussed the scope of the trial and agreed that the only two issues before the jury would be whether Lovett had the capacity to make a will as of December 6, 1989 and whether Lovett revoked the will by any particular act.
 {¶ 20} The case then proceeded to trial, at which the following evidence was presented. John Pfefferle, Executor of the Estate of Ruth A. Lovett, deceased, testified that he had known Lovett since 1983 when he first represented her in a divorce action. Subsequently, in 1989, Lovett sought Pfefferle's assistance in probating the will of her close friend Rollie Stamm. Lovett and Stamm lived together and owned property and assets jointly with the right of survivorship. Lovett was the executrix named in Stamm's will. Lovett met with Pfefferle at various times in 1989 regarding the Stamm estate and, at one such meeting, instructed Pfefferle to prepare her own will. Pfefferle testified that Lovett told him that her only relatives were sisters and brothers, nieces and nephews but that they had nothing to do with her and she had nothing to do with them. She further stated that she did not want her family to have any of her money and that they did not need her money but that she wanted to provide for her cat until his death and she wanted to leave her entire estate to the Erie County Humane Society. Pfefferle was clear throughout his testimony that Lovett was very specific in her intent to disinherit her family and to leave her entire estate to the Erie County Humane Society.
 {¶ 21} Pursuant to Lovett's wishes, Pfefferle prepared the will that is the subject of this case. On December 6, 1989, Lovett came to Pfefferle's office to finalize the Stamm estate and to sign her will. Pfefferle testified that while he and Lovett were alone in his office, he asked Lovett to read over the will. Lovett read the will and indicated that it was consistent with her wishes. Pfefferle then called his secretary, Debra Baker, into his office. Pfefferle testified that he introduced Baker to Lovett, told Baker that Lovett was going to sign her will and said "Is that right, Ruth?" Lovett responded, either verbally or by nodding, that she was going to sign her will. Lovett then signed the will in front of Pfefferle and Baker, who both signed the will as witnesses. Pfefferle stated that Lovett then took an unsigned copy of the will to keep with her, Pfefferle put another unsigned copy of the will in his file and filed the original signed copy in a safe deposit box. Approximately two years later, Lovett contacted Pfefferle and told him that she wanted to keep the original will. Accordingly, Pfefferle removed the will from his safe deposit box and sent it to Lovett. That was the last contact Pfefferle had with Lovett. Nevertheless, Pfefferle stated that in all the time that he had known Lovett, and particularly in 1989 when she executed her will, she appeared to him to be a strong, independent, smart business woman who knew what she wanted and knew how she wanted her estate to be handled. Pfefferle also testified that Lovett had a general idea of the size of her estate in that she and Stamm had pooled their assets and held those assets and other property jointly and with rights of survivorship. Because Lovett knew, at the time she signed her will, that she was inheriting approximately $157,000 from Stamm and that represented one-half of Lovett's and Stamm's property, Pfefferle surmised that Lovett had a general idea of her assets at the time she executed her will.
 {¶ 22} Regarding Lovett's relationship with her family, John Bevier, Richard Bevier and Lori Bevier, nephews and a niece of Lovett, testified at the trial below. John, a plaintiff in the case, stated that he never met his Aunt Ruth and would not recognize her if he ran into her. Nevertheless, he stated that after Lovett died, he had questions regarding the validity of her will and wanted it to be examined by a professional. John further stated that after Lovett died, he met with Pfefferle who indicated that he did not have the original or a copy of the will and stated that he did not know how many nieces and nephews Lovett had. John was particularly bothered to learn that in 1991 Lovett had requested and obtained the original signed will and that Pfefferle could not explain why Lovett wanted to then maintain possession of the original will. Finally, John stated that he asked Pfefferle what happened to the cat, to which Pfefferle responded that it had been placed in a loving home. John testified that he subsequently learned that this was not true.
 {¶ 23} Richard Bevier testified that on December 24, 1996, he was notified of Lovett's death by his Aunt Isabel, Ruth's sister, who lived in Florida. Because he lived nearby, he, his sister Lori Bevier and their mother, Audrey Bevier, went to Ruth's home on December 26, 1996 to look for important papers, including Lovett's will. They found the original signed will in a file cabinet along with other important papers. Richard testified that he, Lori and their mother were not surprised to learn that Lovett had left her estate to the Erie County Humane Society. Regarding his relationship with Ruth, Richard stated that he had not seen his aunt for 20 years but that his mother and Lori did have occasional contact with her. Richard further testified that his father and Ruth had been siblings and were close but that his father died in 1981.
 {¶ 24} Lori Bevier, Richard's sister, stated that she first met her Aunt Ruth when Lori was 20 years old but that she had very little contact with Ruth over the years and that Ruth did not know anything about her, Lori's, financial situation. She did state, however, that Ruth had maintained contact with Audrey Bevier, Lori's mother. Nevertheless, Lori's last contact with Ruth was a phone call approximately one year before Ruth died. Lori stated that she phoned Ruth and they had a nice chat, with Ruth asking about her mother and Richard. Upon learning that Ruth had left her estate to the Erie County Humane Society, Lori stated that she was not surprised because she knew that animals had been important to Ruth. She further stated that when she had spoken to Ruth over the years, Ruth always talked about Sinbad and of her concern for Sinbad, so much so that, upon learning of her death and before they saw the will, Lori, Richard and Audrey joked that Ruth probably left her estate to her cat.
 {¶ 25} Regarding Ruth's financial situation, Gary Yontz, Ruth's investment advisor, testified that he first met Ruth in January 1990 when she came to him for investment advise. Between that time and the time of her death, Yontz met with Ruth approximately four to six times per year to review her investments. During the conversations Yontz had with Ruth, Ruth revealed several times that she was fond of animals, was leaving her entire estate to the Erie County Humane Society and that she did not have any close relationships with her family members. It was Yontz's opinion that Ruth was a very competent person who knew the extent of her assets.
 {¶ 26} Karen Gastier, the director of the Erie County Humane Society at the time of the trial below, testified regarding the various locations of the society over the years. Gastier had only been the director of the society since 1999 but had worked there in various positions since 1993. Appellants called Gastier to testify in an attempt to establish that the Erie County Humane Society was not located at 220 West Perkins Avenue, Sandusky, Ohio, in December 1989 and, therefore, to establish that the document purporting to be the Last Will and Testament of Ruth A. Lovett had been altered and was, therefore, invalid. Gastier, however, stated that in 1989 the Erie County Humane Society was located at 220 West Perkins Avenue. She could not explain why the 1989 Sandusky phone directory listed a different address for the society. Nevertheless, when appellees recalled Gastier to testify in their case in chief, Gastier identified a document titled the "Pet Gazette" which was the society's newsletter and was dated August 14, 1989. That document states that the address of the society was at that time 220 West Perkins Avenue, Sandusky, Ohio.
 {¶ 27} Finally, appellants called Harold F. Rodden, a certified questioned document examiner, to testify regarding his examination of the will. Rodden testified that he examined the will twice and noted irregularities in the pages. Rodden stated that staple marks on the four pages of the will do not match up and that pages three and four of the will have been stapled five times whereas pages one and two of the will have been stapled four times. On cross-examination, however, Rodden agreed that the type style and paper appeared to be the same on all four pages. He also agreed that the ink on all four pages appeared to be the same, although he did not test the ink to establish that it was the same.
 {¶ 28} At the conclusion of the testimony, the parties had an in-chambers discussion with the trial judge regarding appellants' request to submit interrogatories to the jury along with the verdict forms. After consideration, the court denied appellants' request over appellants' objection. The parties then made their closing arguments and the court instructed the jury. Upon due deliberation, the jury found that "the instrument dated December 6, 1989 IS the Last Will and Testament of Ruth A. Lovett, deceased, and DOES SATISFY all legal requirements of a Last Will and Testament."
 {¶ 29} On October 18, 2000, appellants filed a motion for a new trial pursuant to Civ.R. 59(A)(6), (7) and (9). Specifically, appellants argued that the judgment was not sustained by the weight of the evidence, that the judgment was contrary to law and that the trial court committed an error of law which appellants called to the attention of the court by failing to submit appellants proposed interrogatories to the jury. On November 28, 2001, the trial court issued a judgment entry denying appellants' motion for a new trial. It is from that judgment and the underlying verdict in favor of appellees that appellants now appeal.
 {¶ 30} Before addressing appellants various assignments of error, we find the following discussion appropriate and necessary to an understanding of the issues raised in a will contest action which challenges a testator's testamentary capacity. In Gannett v. Booher
(1983), 12 Ohio App.3d 49, 55, we noted that "the order admitting a will to probate is prima facie evidence of the validity of the will. R.C.2107.74." We further noted "that in light of this presumption, the burden of proof in a will contest action is upon, * * * the contestants of the will. * * * To carry this burden the contestants must produce evidence which furnishes a reasonable basis for sustaining their claim." Consequently, the burden in the will contest action below was upon appellants to produce evidence of testamentary incapacity.
 {¶ 31} A testatrix has testamentary capacity to make her will when she is of sound mind and memory and not under restraint. R.C. 2107.02. The statutory requirement of "sound mind and memory" is fulfilled by a testatrix's ability to understand at the time the will is executed (1) the nature of the act being performed, (2) the general nature and extent of the property of which disposition is being made, (3) the identity of those who have natural claims upon her estate, and (4) to appreciate her relation to members of her family. Doyle v. Schott (1989),65 Ohio App.3d 92, 94, citing Niemes v. Niemes (1917), 97 Ohio St. 145
(the Niemes test). Testamentary capacity is determined as of the date of the execution of the will. Kennedy v. Walcutt (1928), 118 Ohio St. 442, paragraph two of the syllabus, overruled on other grounds, Kirschbuam v.Dillon (1991), 58 Ohio St.3d 58, 64, fn. 9. Evidence of the testatrix's mental and physical condition both at the time of the making of a will and within a reasonable time prior to and after its execution is admissible as throwing a light on her testamentary capacity. Id.
 {¶ 32} We will now address the assignments of error in the order in which the purported errors occurred in the proceedings below.
 {¶ 33} In their sixth assignment of error appellants assert that the trial court erred when it prohibited appellants' counsel from explaining the legal framework of the Niemes test for testamentary capacity during opening argument. Appellants further assert that the court compounded this error when it refused to allow appellants during closing argument to use a chart designed to lay out the legal elements of testamentary capacity.
 {¶ 34} The purpose of an opening statement is to acquaint the jury with the general nature of the case and to outline the facts which counsel expects the evidence to show. Maggio v. Cleveland (1949),151 Ohio St. 136, 140. Nevertheless, counsel should be given latitude by the court in making an opening statement. Id. In the present case, appellants' trial counsel sought to inform the jury in his opening statement of the four parts of the Niemes test. By informing the jury of this test, counsel asserted he could then explain to the jury the relevance of the facts he would be proving. Counsel also sought to use a chart that listed the requirements of the Niemes test, which he asserted would help the jury follow his argument. The court, however, concluded that while counsel could certainly tell the jury what he believed the evidence would prove, he could not instruct the jury on what the law requires. In his closing argument, counsel twice asserted that he believed the evidence would show that as of December 6, 1989, Lovett did not understand that she was making a will to dispose of her property at her death, did not understand the nature and extent of her property, was not aware of the names and identities of those who would receive her estate if she were to die intestate, and did not appreciate her relationship to those individuals. Given that appellants' counsel clearly informed the jury of what he believed the evidence would prove, we fail to see how appellants were prejudiced by counsel being restricted from informing the jury as to the state of the law in his opening argument. Moreover, it is well-established that it is the province of the court, not counsel, to instruct the jury on the law applicable to a given case. Civ.R. 51(A).
 a. As to appellants' counsel's closing argument, it is well-established that the extent of closing argument is within the sound discretion of the trial court and an appellate court will not reverse a trial court's limits on counsel's closing argument unless it is clear that appellant was denied a fair trial. Byrd v. Baltimore
(1966), 10 Ohio App.2d 187, 195. In the present case, as with counsel's opening argument, the trial court simply prevented appellants' counsel from instructing the jury as to the law applicable to the case. Counsel was still able to direct the jury to the evidence which he believed established that Lovett lacked the testamentary capacity to make a will on December 6, 1989. Accordingly, we fail to see how the trial court abused its discretion and the sixth assignment of error is not well-taken.
 {¶ 35} We will now address the second, third, fourth and fifth assignments of error which challenge various evidentiary rulings of the court below. The Supreme Court of Ohio has stated that "when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." O'Brien v. Angley (1980), 63 Ohio St.2d 159, 163. An abuse of discretion "`connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Calderon v. Sharkey (1982), 70 Ohio St.2d 218,219-220, quoting State v. Adams (1980), 62 Ohio St.2d 151, 157-158.
 {¶ 36} In their second assignment of error, appellants contend that the court erroneously prevented them from questioning John Bevier as to his motives for joining as a plaintiff to the will contest. In particular, appellants assert that the court prevented them from eliciting from John Bevier testimony regarding the fate of Sinbad the cat following Lovett's death. Appellants contend that this testimony was necessary to impeach Pfefferle's statement that Sinbad had been placed in a loving home and to establish that Bevier's motive for becoming involved in the case was not financial gain, as appellees had asserted in their opening argument, but rather learning that Pfefferle had not been truthful with him. Our review of the trial transcript reveals, however, that while the court would not allow Bevier to testify as to Sinbad's fate, the court did allow him to state that he subsequently learned that Pfefferle had not been truthful with him about Sinbad. As this testimony accomplished the dual purposes for which appellants sought to introduce evidence of Sinbad's fate, we fail to see how appellant was prejudiced by the court's ruling. The second assignment of error is not well-taken.
 {¶ 37} In their third assignment of error appellants assert that the trial court erred in failing to allow appellants to introduce into evidence exhibits 4, 5, and 6 which appellants proffered into the record. Those exhibits are each one page documents that purport to be the first page of the Last Will and Testament of Ruth Ann Lovett but are in different type sizes. At the trial below, appellants sought to use these documents to impeach Pfefferle's testimony that the only copies of Lovett's will that existed were the unsigned copy that Lovett took with her on December 6, 1989, an unsigned copy in Pfefferle's file and the original signed copy. Appellees objected on the ground that appellants had never provided them with the documents despite a request for production of documents filed earlier in the case. Appellants counsel responded that he had just discovered the documents the day before, but when asked where he discovered them he responded: "I'm not at liberty to tell you where I got it." Appellants counsel subsequently indicated that the documents came from his client but the court ruled that the documents were inadmissible unless appellants could lay a foundation as to their origin. The court further ruled that they were not produced in discovery and that under Evid.R. 403, the probative value of the documents was substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.
 {¶ 38} Evid.R. 901(A) provides that authentication or identification of evidence is a condition precedent to its admissibility. Such authentication is satisfied by evidence that the matter in question is what it purports to be. In the present case, appellants attempted to introduce documents without establishing what they were. The trial court then prohibited their use but explained to counsel that if he could provide a witness to authenticate the documents, the court would reconsider. Counsel never attempted to authenticate the documents as the court suggested. Under these circumstances we cannot say that the trial court abused its discretion in its ruling, and the third assignment of error is not well-taken.
 {¶ 39} In their fourth assignment of error, appellants assert that the trial court erred in prohibiting questioning and testimony related to the size of Lovett's estate. Appellants assert that because one of the elements of the test for testamentary capacity is whether the testatrix knew the nature and extent of her property, the size of Lovett's estate was relevant to the issues before the court.
 {¶ 40} Prior to the start of the trial, the parties agreed that the only issues to be tried were whether Lovett had the testamentary capacity on December 6, 1989 to make a will and whether she had ever revoked her will. Subsequently, appellants' counsel, on direct examination, asked John Bevier if he knew what he stood to inherit if appellants were successful in the case. Appellees objected, stating that the size of Lovett's estate was not relevant to the case. The court sustained the objection but indicated that she may allow appellants more latitude if appellees raised the issue of motive on cross-examination.
 {¶ 41} Upon review, we find no error in the court's ruling. The relevant issue before the court was whether Lovett understood the general extent of her property at the time she made her will, that is, on December 6, 1989. The size of Lovett's estate at the time of her death seven years later, and thus any amount which Bevier stood to inherit should the will be declared invalid, was irrelevant. Moreover, Pfefferle and Yontz testified that Lovett knew the size of her estate around the time that she made her will. Finally, the jury learned that Lovett inherited approximately $157,000 from Rollie Stamm shortly before she executed her will and that she and Stamm had pooled their individual assets and contributed jointly to the purchase of a car, a house, and five joint and survivorship bank accounts. From this evidence, the jury could surmise that Lovett knew the size of her estate when she made her will. The fourth assignment of error is therefore not well-taken.
 {¶ 42} In their fifth assignment of error, appellants assert that the trial court abused its discretion in preventing appellants from asking Karen Gastier, the director of the Erie County Humane Society, questions regarding the society's treatment of other animals between December 1989, when Lovett executed her will, and October 1991, when Lovett requested that Pfefferle return the original will to her. At the trial below, appellant proffered that Gastier's testimony would have confirmed that during the time period in question, a large number of animals taken in by the Erie County Humane Society were euthanized rather than adopted out. Appellants contend that this evidence was relevant to the issue of whether Lovett intended to revoke her will. R.C. 2107.33(A) states that "[a] will shall be revoked by the testator by tearing, canceling, obliterating, or destroying it with the intention of revoking it, or by some person in the testator's presence, or by the testator's express written direction, or by some other written will or codicil, executed as prescribed by sections 2107.01 to 2107.62 of the Revised Code, or by some other writing that is signed, attested, and subscribed in the manner provided by those sections." The record is clear. There is absolutely no evidence whatsoever in the record before this court that Lovett ever "revoked" her will as that term is defined in R.C. 2107.33(A). Accordingly, the trial court did not err in excluding the evidence proffered, and the fifth assignment of error is not well-taken.
 {¶ 43} In their eighth assignment of error, appellants assert that the trial court erred in prohibiting appellants from stating in their closing argument that witnesses to a will must be satisfied that the testatrix is of sound mind and memory at the time the will is executed. More specifically, appellants argue that witnesses to a will execution must be satisfied that the testatrix meets all of the requirements of theNiemes test. It is appellants' contention that at the time of the execution of her will, Lovett did not express to the witnesses that she knew the names and identities of her next of kin or knew the size of her estate.
 {¶ 44} R.C. 2107.03 provides: "Except oral wills, every last will and testament shall be in writing, but may be handwritten or typewritten. Such will shall be signed at the end by the party making it, or by some other person in such party's presence and at his express direction, and be attested and subscribed in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge his signature." In our view, this statute simply requires that the testatrix acknowledge in the presence of the witnesses that she knows she is signing her will and then must sign the will in the witnesses' presence. There is no requirement that the witnesses interview the testatrix to determine her testamentary capacity. Accordingly, the court did not err in preventing appellants from arguing that witnesses must attest to the four factors of the Niemes test, and the eighth assignment of error is not well taken.
 {¶ 45} In their seventh assignment of error, appellants assert that the jury verdict was against the manifest weight of the evidence and that the trial court therefore erred in denying their motion for a new trial.
 {¶ 46} Civ.R. 59(A)(6) provides that the trial court may grant a new trial on the ground that the judgment is not sustained by the weight of the evidence. The trial court's standard for ruling on a motion for a new trial on this basis is to review and evaluate the credibility of the witnesses and the weight of the evidence in general. The court must decide whether the verdict is contrary to the manifest weight of the evidence (not merely a difference of opinion). If the court finds that the judgment is not supported by the evidence, it must then determine whether, in its discretion, a new trial is warranted to prevent a miscarriage of justice. Rohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph three of the syllabus; Poske v. Mergl (1959), 169 Ohio St. 70,73-74; Verbon v. Pennese (1982), 7 Ohio App.3d 182, 183. On appeal, this court will reverse the trial court's determination only upon a showing that the court abused its discretion. Malone v. Courtyard by Marriott,L.P. (1996), 74 Ohio St.3d 440, 448.
 {¶ 47} As we stated previously, where a will has been admitted to probate, the order of admission is considered prima facie evidence of the validity of the will. Gannett, supra at 55. Accordingly, the burden of proof in a will contest action is upon the contestants of the will. Id. In determining the existence of testamentary capacity, the Niemes test requires a court to consider whether the testator had sufficient mind and memory to: (1) understand the nature of the business in which she was engaged, (2) comprehend generally the nature and extent of her property, (3) know the identity of those who have natural claims upon her estate, and (4) appreciate her relationship to the members of her family. In the present case, Pfefferle, Lovett's attorney who drafted the will, testified that he prepared Lovett's will at her direction. He then showed her the will and she read it in its entirety. She then affirmatively answered Pfefferle's inquiry as to whether the will was written as she directed. Moreover, on the same day that Lovett signed her will, she finalized the administration of Rollie Stamm's estate by signing the final accounting. In addition to this evidence, Gary Yontz, Lovett's financial planner, testified that he met with Lovett four to six times a year and that she was aware of the nature and extent of her property. The jury below could have reasonably surmised from this evidence that Lovett generally knew the nature and extent of her property. Finally, with regard to Lovett's relatives, a reasonable jury could conclude, based on the testimony of various witnesses at the trial and on Lovett's express statement of acknowledgment in her will, that Lovett knew the identity of those who had natural claims upon her estate and appreciated and understood her relationship to those individuals. Appellants' arguments suggest that in order to disinherit those persons who have a natural claim to her estate, a testatrix must maintain a relationship with persons with whom she does not wish to associate. We do not believe that Niemes requires a testatrix to have an intimate knowledge of the lives and finances of her next of kin in order to disinherit them. Rather, the Niemes test, in our view, simply requires that a testatrix maintain a general knowledge of those persons who have a natural claim upon her estate and understand her relationship to them. Moreover, it was appellants' burden to demonstrate that Lovett did not understand she was executing her will, did not
comprehend generally the nature and extent of her property, did not know the names and identities of those with a natural claim to her estate, and did not appreciate her relationship to the members of her family. Appellants failed to meet their burden. Evidence presented at the trial below supported a conclusion that Lovett knew, when she executed her will, that she had a sister, a brother, nieces and nephews and understood that, absent provisions to the contrary, they would have a natural claim to her estate.
 {¶ 48} Given the evidence presented at the trial below, we must conclude that the verdict was supported by the manifest weight of the evidence and the trial court did not abuse its discretion in denying appellants' motion for a new trial. The seventh assignment of error is therefore not well-taken.
 {¶ 49} In their ninth assignment of error, appellants assert that the trial court erred in instructing the jury regarding the lack of capacity to revoke a will.
 {¶ 50} When specific portions of a trial court's instructions are at issue, an appellate court reviews the instructions as a whole.Wagenheim v. Alexander Grant Co. (1983), 19 Ohio App.3d 7, 16. "So long as the law is clearly and fairly expressed to the jury so that they are able to understand it as it applies to the facts in the case at hand, then no reversible error has been committed." Id.
 {¶ 51} In the proceedings below, prior to the court's instructing the jury, the parties met with the court to review the jury instructions. During that meeting, appellants' counsel objected as follows:
 {¶ 52} "MR. RENGEL: The other objection on the instructions is the use of a lack of capacity instruction as it relates to revocation. We don't believe there's been any evidence presented by either side that there was lack of capacity to revoke in 1991 when she picked up her Will. As a matter of fact, I think all the evidence by both sides was submitted to prove that in fact she did know what she was doing when she stopped in 1991 to pick up the Will and that she was in control of her faculties. So we think — it's an instruction that doesn't really tie into the evidence in any way.
 {¶ 53} "THE COURT: The instruction is right out of OJI for the record.
 {¶ 54} "MR. RENGEL: Uh-huh, that's right.
 {¶ 55} "THE COURT: Along with the rest of the instruction as to revocation. And since revocation is an issue in the case, the Court feels it's appropriate to give the instruction; whether there's any evidence of it or any indication, that will be up to the jury to decide."
 {¶ 56} Thereafter, the court instructed the jury, in part, as follows:
 {¶ 57} "The essence of a Will is that it is revocable and the power to execute or make a Will implies the power to revoke it.
 {¶ 58} "The statutes provide the manner of revocation. A Will shall be revoked by the testatrix hearing [sic], canceling, obliterating or destroying it with the intention of revoking it by the testatrix herself or by some person in her presence or by her express written direction. In this connection, the second factual issue for you to consider under the evidence before you is, did the testatrix during her lifetime tear, cancel, obliterate, or destroy said Will herself or by some person in her presence or by her direction with the intention of revoking it.
 {¶ 59} "Revocation is an act of the mind which must be demonstrated by some outward and visible sign. The testatrix must intend to revoke her Will and must perform one of the acts provided by statute in concurrence with such intent. An intention alone does not operate as a revocation. The intent may be inferred from the nature of the act or it may be shown by other evidence, but it must in some persuasive way be made to appear. One lacking testamentary capacity at the time of anattempted revocation is not competent to revoke a prior Will." (Emphasis added.)
 {¶ 60} The emphasized portion of the quoted instruction is the portion to which appellants object and which they claim amounts to reversible error. Prior to trial, the parties agreed that the only issues before the court would be whether Lovett had the testamentary capacity to execute her will and whether she had ever revoked her will. During the trial, however, no evidence was presented from which a reasonable jury could conclude that Lovett ever revoked her will. Accordingly, although the quoted instruction is a correct statement of the law, its inclusion in the charge to the jury was not warranted. Nevertheless, we find that the court's inclusion of this instruction did not prejudice appellants in any way and amounted to harmless error. The ninth assignment of error is therefore not well-taken.
 {¶ 61} In his first assignment of error, appellants assert that the trial court erred in refusing to submit to the jury interrogatories proposed by appellants to test the jury verdict.
 {¶ 62} Civ.R. 49(B) reads in relevant part: "The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."
 {¶ 63} The Supreme Court of Ohio, interpreting Civ.R. 49(B), has held that "[f]ollowing a timely request by a party, a mandatory duty arises to submit written interrogatories to the jury, provided they are in the form the court approves." Cincinnati Riverfront Coliseum, Inc. v.McNulty, Co. (1986), 28 Ohio St.3d 333, 336. The court has further recognized, however, that Civ.R. 49(B) "does not require the trial judge to act as a `"`mere conduit who must submit all interrogatories counsel may propose.'"'" Ziegler v. Wendel Poultry Serv., Inc.(1993),67 Ohio St.3d 10, 15, quoting Ramage v. Cent. Ohio Emergency Serv., Inc.
(1992), 64 Ohio St.3d 97, 107, quoting Ragone v. Vitali Beltrami,Jr., Inc. (1975), 42 Ohio St.2d 161, 165. "The court retains limited discretion to reject proposed interrogatories where they are ambiguous, confusing, redundant, or otherwise legally objectionable. Proper jury interrogatories must address determinative issues and must be based upon the evidence presented." Ziegler, supra at 15, citing Ramage, supra at paragraph three of the syllabus. Finally, "Civ.R. 49(B) does not require submission of an interrogatory which is `"merely of a probative or evidentiary nature."'" Ziegler, supra at 15, quoting Ragone, supra at 169.
 {¶ 64} The jury interrogatories proposed by appellants in the proceedings below read as follows:
 {¶ 65} "1. Did Ruth A. Lovett understand that she was making a last will and testament to dispose of her property at death on December 6, 1989.
 {¶ 66} "2. Did Ruth A. Lovett understand generally the nature and extent of her property on December 6, 1989.
 {¶ 67} "3. Did Ruth A. Lovett have in her mind the names and identity of those persons who are her relatives next-of-kin, or the natural objects of her bounty on December 6, 1989.
 {¶ 68} "4. Did Ruth A. Lovett understand and appreciate her relationship to her relatives and next-of-kin on December 6, 1989.
 {¶ 69} "5. Did Ruth A. Lovett either tear, cancel, obliterate or destroy said will herself, or by some person in her presence, or by her direction, with the intention of revoking it anytime after December 6, 1989."
 {¶ 70} The interrogatories further directed the jury to only consider Question #5 if the jury answered all four of the previous questions in the affirmative.
 {¶ 71} The first four interrogatories proposed by appellants set forth the four elements of the Niemes test for testamentary capacity. In rejecting appellants' request to submit the interrogatories to the jury, the trial court determined that because the instructions and general verdict forms would cover all of the issues presented by the interrogatories, the interrogatories would distract the jury and would be redundant. Appellants contend, however, that the court's refusal to submit the interrogatories to the jury denied appellants the ability to "test the verdict" and be reasonably assured that the jury considered every element required to be considered in reaching their verdict.
 {¶ 72} Appellants are correct in their assertion that the purpose of jury interrogatories is to allow the parties to test a general verdict to ensure that the elements of a particular claim have been satisfied or not. York v. Mayfield Neurological Inst., Inc. (1999),133 Ohio App.3d 777, 785. The verdict in the present case, however, was not a general verdict. A general verdict is a verdict by which the jury finds generally in favor of the prevailing party. Civ.R. 49(A). The general verdict form to be used in an action challenging the validity of a will is set forth in 3 Ohio Jury Instructions (2002), Section 363.09, 277, and reads: "We, the Jury, find that the instrument dated ___, IS/IS NOT the last will and testament of ___ deceased. (Circle appropriate word or phrase according to your finding.)" The verdict form in the present case, however, used that language but added "and DOES SATISFY all legal requirements of a Last Will and Testament." Accordingly, the verdict form itself directed the jury to the elements of the Niemes test and appellants' proposed jury interrogatories were redundant. We therefore cannot find that the trial court abused its discretion in refusing to submit appellants' interrogatories to the jury and the first assignment of error is not well-taken.
 {¶ 73} Finally, in their tenth assignment of error, appellants assert that the trial court abused its discretion by making various improper comments in the presence of the jury which were prejudicial to appellants' case and which conveyed to the jury the court's opinion of the case.
 {¶ 74} Appellants first challenge the trial court's limiting of their questioning of Pfefferle. In both instances challenged by appellants, however, Pfefferle had given specific answers to questions proposed by appellants' counsel. After appellants' counsel re-asked the same questions the court instructed counsel that Pfefferle had already answered the question and to move on. Evid.R. 611(A) provides that "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." We find nothing unreasonable or prejudicial about the trial court's admonition of appellants' counsel in front of the jury.
 {¶ 75} Appellants next challenge the trial court's questioning of Pfefferle when it became clear that Pfefferle had stated that Lovett took the original will with her on the day that she signed it and then said that he initially kept the original will, which Lovett obtained from him two years later. Evid. R. 614(B) provides that the court "may interrogate witnesses, in an impartial manner, whether called by itself or a party." Unless there is a showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it is presumed that the trial court acted impartially in questioning a witness as to a material fact or to develop the truth. Jenkins v. Clark (1982), 7 Ohio App.3d 93, 98. During the course of its examination, the court may, in the interests of justice, ask proper questions of witnesses, even if these are leading questions. Id. at 97, citing Gilhooley v. Columbus Ry. Power LightCo. (1918), 20 Ohio N.P. (N.S.) 545. In our view, the court's questioning of Pfefferle was simply an attempt to clarify Pfefferle's testimony and to develop the truth.
 {¶ 76} Lastly, appellants assert that statements made by the court in the presence of the jury during appellants' counsel's closing argument were prejudicial. During appellants' counsel's closing argument, counsel stated that Audrey Bevier, who was going to testify for appellees, did not testify. Appellees' counsel objected and a bench conference ensued. The court's ruling from that bench conference is marked as "inaudible" on the transcript. Appellants' counsel then continued his closing argument:
 {¶ 77} "MR. RENGEL: You are not allowed to consider what Audrey Bevier's relationship was with Ruth Lovett.
 {¶ 78} "MR. HART: Objection.
 {¶ 79} "THE COURT: That's not what I said, Mr. Rengel.
 {¶ 80} "MR. RENGEL: I didn't say you said that, Your Honor.
 {¶ 81} "THE COURT: That's not what my decision was.
 {¶ 82} "MR. RENGEL: Isn't that a proper statement?
 {¶ 83} "THE COURT: No, it is not."
 {¶ 84} Another bench conference then ensued. Appellants assert that the court's admonition of their counsel in front of the jury was prejudicial. We disagree. The court simply attempted to correct counsel's understanding of her prior ruling. While the better practice may have been to call counsel to the bench to make the correction outside of the jury's hearing, we note that in its instruction to the jury, the court specifically charged that "[i]f you have an impression that the Court has indicated how any disputed facts should be decided you must put aside such an impression because that decision must be made by you based solely upon the facts presented to you in this courtroom." Accordingly, the tenth assignment of error is not well-taken.
 {¶ 85} On consideration whereof, the court finds substantial justice has been done the parties complaining and the judgment of the Erie County Court of Common Pleas, Probate Division, is affirmed. Court costs of this appeal are assessed to appellants.
JUDGMENT AFFIRMED.
James R. Sherck, J., Richard W. Knepper, J., and Mark L. Pietrykowski,P.J., CONCUR.