### Sanfrey v. USM Corp.
*[Cite as 8 AOA 707]*

*Case No. CA90-02-003*
*Clinton County, (12th)*
*Decided December 17, 1990*

*David Lancione, Lancione Law Offices, 42 East Gay Street, Suite 1200, Columbus, Ohio 43215, for Plaintiff-Appellee.*

*Thomas J. Gruber, McCaslin, Imbus & McCaslin, 1200 Gwynne Building, 602 Main Street, Cincinnati, Ohio 45202, for Defendant-Appellant.*

HENDRICKSON, J.

Defendant-appellant, USM Corporation dba True Temper Hardware Division, appeals a judgment of the Clinton County Court of Common Pleas in favor of plaintiff-appellee, Arthur F. Sanfrey, in an intentional tort action.

Sanfrey began work at USM's True Temper plant on August 25, 1986. He was subsequently promoted to the position of fork lift operator. A fork lift operator's duties included arriving at the plant before the other employees and turning on the machinery.

Sanfrey arrived at work early on the morning of September 6, 1986, a Tuesday following a long Labor Day weekend, to learn the duties of his new position. Barry Godby, a foreman, took Sanfrey through the Plant and showed him how to turn on the machinery. The two men then walked to the rear of the plant to start the incinerator, known as the scrapwood fire in the "Burn-O-Matic" teepee incinerator because of its conical shape.

The teepee incinerator was a large steel structure with a conveyor that carried scrap wood into a pit. Generally blowers inside the unit directed air at the wood pile and ignited any warm embers. However, if the incinerator had not been operated for several days, the blowers did not always ignite a fire.

Godby showed Sanfrey how to operate the blowers. At that time, Godby observed a live coal on the perimeter of the pit, but not directly in the wood pile. Because the incinerator had not been operated over the long weekend, the wood scraps did not ignite. Godby told Sanfrey that if the blowers did not start the fire, he would have to douse the scrap wood with a fuel mixture. The two men went to the fuel tank area and poured a fifty-fifty mixture of diesel fuel and gasoline into a plastic bucket. They then walked back to the incinerator and Godby told Sanfrey to douse the scrap wood with the fuel mixture. As Sanfrey did so, there was an explosion and Sanfrey was set on fire. Godby was able to pull him to safety and extinguish the fire.

On August 12, 1987, Sanfrey filed a complaint alleging that USM had committed an intentional tort against him. A trial to the court was held on August 30, 1989. At trial, Sanfrey introduced into evidence the instruction manual for the incinerator which indicated that following a long weekend, the pit should be cleaned out and a new fire started with kerosene or diesel fuel. Mohamed Gohar, an expert witness for Sanfrey, testified that gasoline should never be used to start a fire because it is so highly combustible and that kerosene, which has a much lower "flashpoint," would be safer to use. Godby testified that he was not aware of the manual at the time of the accident and that although he had never been a fork lift operator, the instructions he gave Sanfrey were, as far as he knew, the usual procedure to start the incinerator.

On January 23, 1990, the trial court filed a decision and judgment entry concluding that USM had committed an intentional tort pursuant to R.C. 4121.80. It stated that "[t]he Court *** finds that the Defendant knew or should have known that his instructions to plaintiff to use a mixture of gasoline & kerosene [sic], in this instance, would be certain or substantially certain to cause the consequences which occurred to the Plaintiff ***, and further that the failure of Defendant to inform the Plaintiff of the contents of the mixture was a deliberate misrepresentation of a hazardous substance, gasoline, ***." This appeal followed.

In its sole assignment of error, USM states that the judgment of the trial court was contrary to law and against the manifest weight of the evidence. Under this assignment of error, it presents three distinct issues for review, which we will consider separately. Under its first issue for review, USM argues that the decision of the trial court was against the manifest weight of the evidence. In particular, it alleges that Sanfrey failed to prove that USM deliberately misrepresented the nature of the fuel mixture used to ignite the incinerator and that therefore he was not entitled to any presumption of intent. We find these arguments to be well-taken.

This case is controlled by R.C. 4121.80(G) which defines an intentional tort as follows:

"(1) 'Intentional tort' is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.

"Deliberate removal by the employer of an equipment safety guard or deliberate misrepresentation of a toxic or hazardous substance is evidence, the presumption of which may be rebutted, of an act committed with the intent to injure another if injury or an occupational disease or condition occurs as a direct result.

"'Substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death."

This statute imposes a "new, more difficult standard for the 'intent' requirement of a workers' compensation intentional tort than that established in *Jones v. VIP Development Co.* (1984), 15 Ohio St. 3d 90 ***." *Van Fossen v. Babcock & Wilson Co.* (1988), 36 Ohio St. 3d 100, paragraph four of the syllabus. It does not merely reiterate the common law definition of an intentional tort expressed in *Jones* and explained in *Van Fossen.* See *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St. 3d 190, 191; *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, 138.

According to the statute, an intentional tort occurs when (1) the employer intends to injure the employee, or (2) when the employer acts with the belief that the injury is substantially certain to occur. However, "substantially certain" is defined to mean that an employer acts with deliberate intent to cause an employee to suffer injury. In either event, it is clear that "intent" to injure under the statute "connotes having an express goal or purpose of causing injury, signifying a 'purpose' to injure arrived at after careful planning or calculation in light and consideration of the potential consequences." *Kowal v. Ohio Poly Corp.* (1987), 34 Ohio Misc. 2d 22, 28; *Anders v. Pease Co.* (July 9, 1990), Butler App. No. CA89-11-156, unreported, at 3-4.

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C. E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, syllabus; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St. 3d 77, 80. We find no evidence in the record to support the conclusion that USM deliberately intended to injure Sanfrey or that it deliberately misrepresented the contents of the fuel mixture. The trial court, in reaching the conclusion that USM committed an intentional tort, erroneously relied on the common law standard of intent expressed in *Van Fossen, supra,* which does not apply in this case. Further, even if we were to apply the less stringent *Van Fossen* standard, we still find no evidence to support the conclusion that USM knew that "harm to the employee [would] be a substantial certainty and not just a high risk." *Id.,* at paragraph five of the syllabus.

We find no cases interpreting the "hazardous substance" provision in R.C. 4121.80 (G)(1). However, in the pre-statute case of *Hamlin v. Snow Metal Products,* No. 84-409, consolidated with *Jones, supra,* the supreme court considered a case where an employer "actively misrepresent[ed]" the dangers of a hazardous substance. In that case, the evidence demonstrated that the employer knew of the dangers posed by the chemicals its employees were using and of the health hazards posed by the acid fumes which were being recirculated in the workplace. Yet the employer at first ridiculed or ignored employees' complaints and then continued to purposefully guarantee its employees that their working environment was safe. *Jones, supra,* at 91-92 and 97-98.

In the present case, there was no conduct on the part of USM which would rise to the level of the deliberate misrepresentation described in *Hamlin.* Sanfrey testified that Godby had told him the fuel mixture contained kerosene and diesel fuel when in fact it contained gasoline and diesel fuel. Godby denied telling this to Sanfrey. Nevertheless, assuming there was a misrepresentation regarding the use of gasoline, the record is devoid of any evidence that the misrepresentation was deliberate or that there was any intent by USM to deceive Sanfrey into believing the solution was not a dangerous substance. Sanfrey himself testified that he knew the solution in the bucket was flammable. He also recognized that the sole purpose of dousing the wood scraps with the mixture was to start the fire. The record demonstrates that Sanfrey appreciated the nature of the danger posed by using the flammable mixture and fails to demonstrate that he was led to believe otherwise.

In addition, Godby's testimony established that he had no motive or intent to deceive Sanfrey about the make-up of the mixture. He testified that if Sanfrey had not come to work that day, he would have used the same mixture himself to douse the wood scraps. Further, if Godby had truly intended to mislead Sanfrey regarding the hazardous nature of the fuel mixture, he would not have returned with Sanfrey to the incinerator room or remained in the immediate zone of danger while Sanfrey threw the mixture in the incinerator. In sum, the evidence does not support the conclusion that USM made a deliberate misrepresentation regarding the use of gasoline and therefore there was no presumption of intent.

In addition to the record being devoid of any evidence proving a deliberate misrepresentation, it is also devoid of any other evidence tending to show an intentional tort under the statute or under *Van Fossen, supra.* Godby testified that, to his knowledge, the procedure he demonstrated to Sanfrey was the same procedure that had been used by fork lift operators in the past. This testimony was uncontroverted. Additionally, there was no evidence showing that anyone at the plant knew the use of gasoline instead of kerosene was inherently more dangerous or that this procedure had resulted in any prior accidents. See *Sanek v. Duracote Corp.* (1984), 43 Ohio St. 3d 169, 172; *Van Fossen, supra,* at 118; *Kunkler, supra,* at 139-40. In sum, while USM's conduct may have been negligent or even reckless, it does not rise to the level of an intentional tort. *Van Fossen, supra,* at paragraph six of the syllabus. Accordingly, the trial court erred by entering judgment in favor of Sanfrey.

Under its second issue for review, USM argues that the trial court erred by permitting Sanfrey's expert witness to testify on the critical issue of USM's knowledge of a substantial certainty of harm and knowledge of a dangerous condition. USM alleges that expert testimony purporting to establish the employer's knowledge at the time of the incident was improper opinion testimony and the trial court erroneously relied on this testimony. We find these arguments to be well-taken. Evid. R. 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Additionally, Evid. R. 704 provides:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

Evid. R. 702 and 704 permit expert testimony on the ultimate issue to be determined by the trier of fact if (1) the witness is qualified as an expert and (2) scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or tb decide an issue of fact. *Lee v. Baldwin* (1987), 35 Ohio App. 3d 47, 49; *McQueen v. Goldey* (1984), 20 Ohio App. 3d 41, 48. While testimony on an ultimate issue to be decided by the trier of fact is not *per se* inadmissible, it is within the discretion of the trial court to refuse to admit the testimony of an expert witness on an ultimate issue where the expert's testimony is not essential to the trier of fact's understanding of the issue and the trier of fact is capable of coming to a correct conclusion without it. *Bostic v. Connor* (1988), 37 Ohio St. 3d 144, paragraph three of the syllabus. Further, "[a]n expert may not offer an opinion which embraces the 'ultimate issue' if that opinion is essentially a bare conclusion significantly lacking in supporting rationale." *Gannett v. Booher* (1983), 12 Ohio App. 3d 49, 52.

The trial court, over objection, permitted Mohammed Gohar, Sanfrey's expert witness, to testify as follows:

"Q. Mr. Gohar, do you have an opinion based upon a reasonable degree of professional certainty as to whether or not the procedure that Mr. Sanfrey was instructed to use and did use to start a fire in the Burn-O-Matic incinerator or teepee burner would be substantially certain to result in an explosion and fire that would injure Mr. Sanfrey----you may answer that yes or no?

"MR. GRUBER. Objection, Your Honor. If I may, since we don't have a jury, explain why. First of all, as is in our trial brief, expert testimony may not be used to establish proof of the employer's knowledge regarding the substantial certainty of harm.

"***

"Q. So, do you have an opinion?
"A. Yes.

"Q. What is your opinion?

"A. If gasoline and kerosene or diesel fuel mixture would be poured using that five gallon pickle jar with about 15 inch opening, that it is most certain that a fire would come back to the person who is fueling the fire with the gasoline.

"Q. Mr. Gohar, I have another opinion question for you. Do you have any opinion---- assuming the same facts we assumed before---- and assume those throughout the next four or five questions I have for you ----do you have an opinion, based upon a reasonable degree of professional certainty as to whether or not the procedure Mr. Sanfrey was instructed to use and did use in starting the fire in the Burn-O-Matic incinerator or teepee burner, was a dangerous process which would be substantially certain to result in an explosion and fire that would injure Mr. Sanfrey and you may answer that yes or no.? [sic]

"MR. GRUBER. Objection for the record, it is irrelevant.

"THE COURT. Note your objection.

"A. My answer is yes, it would be dangerous.

"Q. What is your opinion?

"A. It is pretty much the same as the first time because gasoline should not and cannot-- the fumes travel so fast---once you have a flame on the other end, okay, it will travel back to the source. This is a very basic thing we teach firemen. The fire travels back to the source if you have an open container with gasoline in it, that whatever is going to start over there is going to come back to you with an incredible speed.

"***

"Q. Mr. Gohar, do you have an opinion based upon a reasonable degree of professional certainty that Mr. Sanfrey's employer, with substantial certainty knew or should have known that the procedure that Mr. Sanfrey was required to follow to ignite the wood scraps in the teepee burner, would have caused injury to Mr. Sanfrey?

"MR. GRUBER. Objection for the record.

"THE COURT. Should have known.

"Q. Do you have an opinion?

"A. Gasoline, again, is a very common dangerous substance. It is controlled and it is very common knowledge how the very average and common person knows how to handle gasoline. The fact that he is responsible being an employer and manufacturer and in charge

of other employees, you should have had a safety procedure to prohibit the use of gasoline to start the fire."

We find that the trial court's decision to allow this testimony was an abuse of discretion. The phrase "substantial certainty" is defined in R.C. 4121.80(G) to mean that an employer acts with the deliberate intent to injure an employee. This test and the test set forth in *Van Fossen, supra,* clearly focus on the employer's knowledge. Gohar was qualified as a fire and explosion expert and therefore was qualified to render opinions regarding the properties of gasoline and kerosene and other areas within his expertise. However, his credentials did not qualify him to testify as to the mindset or knowledge of USM or its employees at the time of the accident. That issue was not within his area of expertise, and his opinion could not have been based upon his personal knowledge of facts or data submitted as evidence in the case. See Evid. R. 703.

Further, Gohar's testimony was not admissible on this issue because it was not scientific, technical or other specialized knowledge which would assist the court to understand the evidence or to determine a fact in issue. The critical issue in this case was the extent of USM's knowledge. This issue is not of a highly technical nature beyond the comprehension of the court. The court had before it the necessary facts from which it could ascertain USM's knowledge. Gohar was no more qualified than the average layman to express an opinion on this subject as he had no superior knowledge or skill relating to this subject which would have been helpful to the trial court.

We find that the admission of the testimony was prejudicial because the record is otherwise devoid of any competent evidence establishing that USM acted with a deliberate intent to cause Sanfrey harm. Further, we do note that this case was tried to the court, not a jury. A judge is presumed to consider only relevant, competent, material evidence unless the record shows otherwise. *State v. Eubank* (1979), 60 Ohio St. 2d 183, 187. In this case, the record demonstrates that the trial court did rely on this testimony. Sanfrey seemingly convinced the trial court that he was only required to prove that the accident was substantially certain to occur and that the employer should have known that the

method used was dangerous. Clearly, this is an erroneous interpretation of the statute. We hold that the trial court erred by allowing Gohar to testify regarding USM's knowledge.

Under its third issue for review, USM alleges that the trial court erred in refusing to permit Sanfrey to testify that he did not believe USM intended to cause him any harm. We find this argument to be well-taken.

Evid. R. 701 provides:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Evid. R. 701, in conjunction with Evid. R. 704, permits lay opinion testimony on the ultimate issue to be decided by the trier of fact if the witness has firsthand knowledge of the subject of his or her testimony and if that testimony aids the trier of fact in understanding the testimony of the witness or determining a fact in issue. *Lee, supra,* at 49.

Sanfrey, unlike Gohar, had a sufficient basis on which to base an opinion on whether USM had an intent to injure him. Sanfrey had firsthand knowledge of the conduct of his employer and was in a position to assess that conduct. He also had firsthand knowledge of the facts and circumstances surrounding the accident. Sanfrey's own mental impression as to whether his employer intended to injure him, gleaned from personal observation of the employer's actions, would also be helpful to the trier of fact. We find that the trial court erred in excluding Sanfrey's testimony and that the error was prejudicial considering that the court had already invoked the presumption of intent set forth in R.C.4121.80(G)(1).

In sum, we hold that the decision of the trial court was against the manifest weight of the evidence. We also hold that the trial court erred by admitting Gohar's testimony on the ultimate issue in the case and by excluding Sanfrey's testimony. Accordingly, USM's sole assignment of error is sustained and pursuant to App. R. 12(B), judgment is entered in favor of USM.

*Judgment reversed.*

JONES, P.J., concurs.

KOEHLER, J., dissents.

KOEHLER, J., dissenting.

This court has reheard the trial of this cause. It has drawn its own factual conclusions and then erroneously applied its own interpretation of the standard to be met in proof of an intentional tort. Additionally, to reach this result the majority has considered Evid. R. 701 and 704 in a manner to deprive the trial court of the benefit of the expert opinion presented by appellee. Further, the court would allow a layman to testify as to his conclusion on a legal issue which the courts have failed to appropriately define.

As another member of this court has often opined: "Once again members of this court have chosen to interject their views on the facts and to substitute their judgment for that of a trial court." (A partial quote from the dissent in *State v. Cochran* [Aug. 6, 1990], Warren App. No. CA89-11-070, unreported.)

Therefore, I dissent.