**BATTELLE MEMORIAL INSTITUTE, Appellee,**

v.

**BIG DARBY CREEK SHOOTING RANGE, Appellant.**

[Cite as *Battelle Memorial Inst. v. Big Darby Creek Shooting Range*, 192 Ohio App.3d 287, 2011-Ohio-793.]

Court of Appeals of Ohio,
Twelfth District, Madison County.

No. CA2010–08–017.

Decided Feb. 22, 2011.

288

Bailey Cavalieri L.L.C., Dan L. Cvetanovich, and Sabrina C. Haurin, for appellee.

Reminger Co., L.P.A., Frank Leonetti III, and Martin T. Galvin; and Michael R. Moran Co., L.L.C., and Michael R. Moran, for appellant.

POWELL, Presiding Judge.

{¶ 1} We are asked to determine whether a Madison County trial court erred when it preliminarily enjoined the operation of a shooting range in a dispute between the range and a neighboring research facility over whether fired bullets are escaping the range.

{¶ 2} Battelle Memorial Institute filed a complaint for a preliminary and permanent injunction claiming nuisance and negligence in the operation of the Big Darby Creek Shooting Range, L.L.C. ("Big Darby"). Battelle claimed that bullets fired from the range were landing on or striking structures on Battelle's property. The Madison County Common Pleas Court granted the preliminary injunction after hearing more than two days of testimony. On appeal of that decision, Big Darby argues in its single assignment of error that the trial court erred in granting the preliminary injunction.

{¶ 3} Big Darby's stated issue in its appeal is whether a trial court may grant a preliminary injunction on a claim for nuisance, "where the defendant is afforded immunity from the nuisance claim, and where there is no objective, scientifically valid expert or fact testimony supporting the existence of the claimed nuisance."

{¶ 4} According to R.C. 1533.84, the chief of the division of wildlife shall adopt rules establishing generally accepted standards for shooting ranges, and these rules should be no more stringent than National Rifle Association ("NRA") standards and include standards for the limitation and suppression of noise and standards for public safety. At the time of its establishment, a shooting range shall comply with all existing local ordinances, regulations, or laws.[1]

{¶ 5} R.C. 1533.85 is titled "Immunities regarding noise at shooting ranges." Most of the paragraphs of this statute deal with noise issues at a shooting range. However, R.C. 1533.85(C) states, "Notwithstanding any contrary provision of law, the courts of common pleas [and] municipal courts * * * shall not grant injunctive relief under Chapter 3767. or any other section of the Revised Code, under an ordinance, resolution, or regulation of a political subdivision, or under the common law of this state against the owner or operator of a shooting range in a nuisance action if the court determines that the owner's or operator's actions or omissions that are the subject of a complaint substantially complied with the chief's noise rules or the chief's public safety rules, whichever apply to the nuisance action."

{¶ 6} Ohio Adm.Code 1501:31–29–03(A) states that in accordance with R.C. 1533.84, the chief of the division of wildlife establishes standards for shooting ranges in Ohio, addressing noise levels, hours of operation, and safety. Ohio Adm.Code 1501:31–29–03(A) also states that private or public shooting ranges in Ohio should substantially comply with these standards to receive the civil and criminal immunities granted under R.C. 1533.85.

{¶ 7} According to Ohio Adm.Code 1501:31–29–03(D), private and public shooting ranges should substantially comply with safety guidelines generally recognized and accepted by the NRA. "Suggested safety guidelines are described or explained in great detail in 'The NRA Range Source Book, Section I, Chapter 2, (1999 Edition).' "[2] The administrative code section also requires that each range implement a safety plan and includes, without limitation, a number of items the plan should include.[3]

{¶ 8} We have reviewed the extensive testimony and exhibits admitted at the hearing, and will provide only a brief summary of the evidence.

{¶ 9} Battelle's campus consists of several buildings. Big Darby is located west of Battelle's campus, with State Route 142 running north and south between

---

1. R.C. 1533.84.

2. Ohio Adm.Code 1501:31–29–03(D).

3. Id.

them. Big Darby has five shooting bays. The trial court made findings that Bay 1 is a 300–yard high-powered rifle bay with an earthen backstop, which had settled from 20 feet in height to 18.25 feet. The firing line of Bay 1 is 6,500 feet from three buildings on Battelle's campus. Bays 2 to 5 are 50–yard ranges with much shorter backstops. The trial court found that the firing lines for Bays 2 to 5 are approximately 5,750 feet from the same three Battelle buildings.

{¶ 10} Battelle presented two witnesses who said that they had encountered gunfire coming from the direction of Big Darby. A sergeant with Battelle security testified that on one occasion in 2009, he saw employees in the north parking lot of Battelle "crouching over" as they moved quickly toward a building. The employees told him that they had heard bullets traveling through the trees just west of the north parking lot. The sergeant said that he had also heard bullets going through the trees and sounds of gunfire.

{¶ 11} Another witness was an off-duty Battelle employee who was fishing with his family at the recreation lake on the Battelle property in 2009. He had just commented to his wife that the gunfire from Big Darby was particularly loud that day when he had heard the whistling sound of a bullet hitting the cattails near where they were standing. The employee said his daughter had reacted to the whistling sound by dropping to the ground. The trial court observed that a police investigation of both gunfire incidents yielded no findings.

{¶ 12} The trial court stated that 13 bullets were recovered from the west side of three buildings on the north campus, directly down range from Big Darby. The trial court also noted that Battelle security found eight bullet-impact areas on the west-facing area of Battelle buildings. Big Darby emphasized that there were reports of gunfire heard in and around Battelle from sources other than Big Darby. For example, a Battelle security employee acknowledged that two individuals were discovered target shooting at a metro park east of Battelle's campus. Employees who testified also acknowledged that there may be individuals who disagree with the nature of the some of the research conducted at the facility.

{¶ 13} Battelle presented the testimony of James Gombarcik, a senior ordnance technician working for Battelle, who was asked to look into at least two bullet strikes that were discovered. Asked about the situation where a bullet struck a vehicle, Gombarcik found that the bullet had traveled from east to west, or came from a direction east of Battelle. He also examined the bullet strike to an air conditioning unit ("HVAC"). Gombarcik testified that he believed that the bullet found below the unit had caused the strike mark on the HVAC unit and that the bullet had come from Big Darby.

{¶ 14} The trial court stated in its decision that it considered this witness for his lay testimony only. The trial court indicated that the witness was unable to

explain the underlying science of ballistics to give credibility to an expert opinion, but the court found that the witness's opinion was "rationally based on his perceptions and helpful in determining the point of origin of that particular bullet."

{¶ 15} Battelle witness, Junior L. Davis, was qualified by the trial court as an expert witness, but it is not entirely clear from the record the specific area in which Davis was qualified as an expert. Davis recently retired from and had extensive experience with security forces for federal facilities in Tennessee, and his experience included developing shooting ranges as part of his employment. Davis testified that he viewed a number of issues that he believed made Big Darby not substantially compliant with the NRA Range Source Book. Davis listed a number of criticisms of the range, including ricochet problems, and issues with backstop height and the condition of some backstops and targets. Davis stated that most of the bullets found on the Battelle buildings came from the direction of Big Darby. He acknowledged that this opinion about the direction of the discovered bullets was an educated guess based upon his experience, not scientific fact.

{¶ 16} Kevin Dixon, shooting sports and range coordinator for the Ohio Department of Natural Resources, Division of Wildlife, was called to testify by Big Darby. He recommended some changes for the range, such as raising backstops for the ranges to "at least the point of 20 feet across the board" and adding "bullet catcher[s]" on the top of backstops.

{¶ 17} Dixon said that some of the Battelle buildings had marks that could be bullet strikes in areas other than just the side of those buildings that face Big Darby. Dixon also said that Davis, Battelle's expert witness, was holding Big Darby to a higher standard than Ohio law requires. Dixon stated that Big Darby was in substantial compliance with the division of wildlife standards for shooting ranges.

{¶ 18} In *Barnett v. Carr ex rel. Estate of Carr*, this court explained that "nuisance" is a term used to designate "the wrongful invasion of a legal right or interest."[4] Battelle indicated that its cause of action was for a qualified private nuisance.

{¶ 19} A "private nuisance" is a nontrespassory invasion of another's interest in the private use and enjoyment of land.[5] In order for a private nuisance to be actionable, the invasion must be either (a) intentional and

4. *Barnett v. Carr ex rel. Estate of Carr* (Sept. 17, 2001), Butler App. No. CA2000–11–219, 2001 WL 1078980, at *10.

5. Id.

unreasonable or (b) unintentional but caused by negligent, reckless, or abnormally dangerous conduct.[6]

{¶ 20} "Qualified" nuisance is premised upon negligence.[7] To recover damages for a qualified nuisance, negligence must be averred and proven.[8] A qualified nuisance, or a nuisance dependent on negligence, consists of an act lawfully but "so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another."[9] Under such circumstances, the nuisance arises from a failure to exercise due care, and even that which was lawful in origin may become a nuisance through negligence in maintenance.[10]

{¶ 21} The purpose of a preliminary injunction is to preserve the status quo of the parties pending a final adjudication of the case on the merits.[11] In ruling on a motion for preliminary injunction, a trial court must consider whether (1) the moving party has shown a substantial likelihood that he or she will prevail on the merits of their underlying substantive claim, (2) the moving party will suffer irreparable harm if the injunction is not granted, (3) issuance of the injunction will not harm third parties, and (4) the public interest would be served by issuing the preliminary injunction.[12] The party seeking the preliminary injunction must establish each of these elements by clear and convincing evidence.[13]

{¶ 22} The decision whether to grant or deny an injunction is a matter solely within the discretion of the trial court, and a reviewing court should not

---

6. Id.

7. Id.

8. Id. citing *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 276, 595 N.E.2d 855.

9. *Barnett,* Butler App. No. CA2000–11–219, 2001 WL 1078980, at *11, citing *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.* (1946), 146 Ohio St. 406, 32 O.O. 450, 66 N.E.2d 203, paragraph two of the syllabus.

10. *Barnett* at *11.

11. *Back v. Faith Properties, L.L.C.,* Butler App. No. CA2001–12–285, 2002-Ohio-6107, 2002 WL 31502077, ¶ 36.

12. *Planck v. Cinergy Power Generation Servs., L.L.C.,* Clermont App. No. CA2002–12–104, 2003-Ohio-6785, 2003 WL 22947249, ¶ 17.

13. *DK Prods., Inc. v. Miller,* Warren App. No. CA2008–05–060, 2009-Ohio-436, 2009 WL 243089, ¶ 6.

disturb the judgment of the trial court in the absence of a clear abuse of discretion.[14]

■ {¶ 23} In its decision granting the preliminary injunction, the trial court cited a portion of Ohio Adm.Code 1501:31–29–03(D), which states that shooting ranges should be large enough to accommodate the appropriate disciplines and projectile containment as modified by existing topographic features and additional range features.

{¶ 24} The trial court said it relied on the NRA Source Book to review recommendations for covered backstops, overhead ground and side baffles, etc., and noted that the source book stated that projectiles must be confined on the property. The trial court found that fired bullets were escaping from Big Darby, which endangered the traveling public on State Route 142 and Battelle employees and facilities. Because projectiles were not confined to Big Darby property, the trial court found for purposes of the preliminary injunction that the range was not in substantial compliance with NRA standards. As a result, the trial court evaluated the appropriate factors for granting a preliminary injunction and found that granting a preliminary injunction was proper.

{¶ 25} Turning to Big Darby's arguments, we do not agree that the record supports the claim that the trial court "completely ignored" Ohio's Range Protection Act or disregarded Big Darby's competent evidence. The trial court cited the range law in its decision. The trial court also discussed the evidence presented by Big Darby. The weight to be given this evidence is determined by the trier of fact.[15]

■ {¶ 26} Big Darby also challenges the admission or exclusion of some evidence or testimony. Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence.[16] And an appellate court reviewing the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion.[17]

■ {¶ 27} Further, trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion.[18]

---

**14.** *Danis Clarkco Landfill Co. v. Clark Cty. Solid Waste Mgt. Dist.* (1995), 73 Ohio St.3d 590, 604, 653 N.E.2d 646.

**15.** *Gannett v. Booher* (1983), 12 Ohio App.3d 49, 51, 12 OBR 190, 465 N.E.2d 1326.

**16.** *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056; see also Evid.R. 701.

**17.** *Rigby.*

**18.** See *Terry v. Caputo,* 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, ¶ 16.

In general, courts should admit such expert testimony when it is material and relevant and, according to Evid.R. 702, under the following circumstances:

{¶ 28} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 29} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 30} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information.  To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 31} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

{¶ 32} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 33} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."[19]

{¶ 34} The trial court did not abuse its discretion when it permitted Battelle's expert witness, Davis, to testify about safety features for shooting ranges, as Davis possessed knowledge or experience in shooting-range development beyond that possessed by lay persons.[20]  Davis acknowledged that his opinion that the bullets or bullet strikes on Battelle buildings came from the direction of Big Darby was not based upon scientific or technical information. While this determination may be a closer call, we cannot say that the trial court abused its discretion when it permitted Davis to give his opinion that he believed the bullets came from the direction of Big Darby, based upon his specialized knowledge, skill, experience, training, or education.[21]

{¶ 35} We also do not find that the trial court abused its discretion when it determined that Gombarcik's testimony would be considered as lay testimony only, "rationally based on his perceptions and helpful in determining the point of origin of that particular bullet."

---

**19.**  Id. at ¶ 16–22.

**20.**  Evid.R. 702.

**21.**  Id.

{¶ 36} Big Darby also argues that the trial court erred in not allowing it to use a preliminary report from the Ohio Bureau of Criminal Identification and Investigation ("BCI & I"). The record indicates that the state of Ohio initially filed a motion to quash the subpoena for the individual who was responsible for the BCI & I report. The trial court granted the motion at the beginning of the hearing, accepting the state's argument that the preliminary report was a confidential law-enforcement investigatory record.

{¶ 37} It appears from the record that BCI & I subsequently provided the preliminary report with an affidavit of authenticity and indicated by cover letter that it was releasing the report "upon agreement with counsel for Big Darby." According to the transcript, the trial court told Big Darby that it would have to produce the author of the report the next day to have the report admitted. Big Darby did not produce the witness, but proffered the report after the trial court would not admit it.

{¶ 38} A trial court's decision on a motion to quash a subpoena generally is reviewed for an abuse of discretion.[22] Civ.R. 45(C)(3)(b) provides that, on timely motion, a court shall quash or modify a subpoena if it "[r]equires disclosure of privileged or otherwise protected matter and no exception or waiver applies." The state initially moved to quash the subpoena, and the motion was granted. We cannot say that the trial court abused its discretion when it initially quashed the subpoena, and later, when it ruled that the report could be admitted if the author testified, which he did not.

{¶ 39} Finally, Big Darby moved to stay enforcement of the preliminary injunction after the trial court issued its decision. Big Darby proposed modifications to the range as part of that effort. To the extent that Big Darby is requesting that this court consider this range-modification plan for purposes of this appeal, we decline to do so.

{¶ 40} Having reviewed the record and the requirements for granting a preliminary injunction, we cannot say that the trial court abused its discretion in granting the preliminary injunction. Big Darby's single assignment of error is overruled.

Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.

---

22. *Madison Cty. Bd. of Commrs. v. Bell,* Madison App. No. CA2005–09–036, 2007-Ohio-1373, 2007 WL 879627, ¶ 30.