[Cite as *Piacentino v. Heinz*, 2025-Ohio-5174.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

ROCCO PIACENTINO,

    PLAINTIFF-APPELLANT,

  v.

CYNTHIA HEINZ, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 9-24-51

OPINION AND
JUDGMENT ENTRY

Appeal from Marion County Common Pleas Court
General Division
Trial Court No. 24 CV 19

Appeal Dismissed

Date of Decision: November 17, 2025

APPEARANCES:

    *Tiffany L. Carwile* for Appellant

    *Morgan K. Napier* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Rocco Piacentino ("Piacentino"), appeals the October 2, 2024 judgment of the Marion County Court of Common Pleas denying his motion for a preliminary injunction. For the reasons that follow, we dismiss the appeal for lack of a final, appealable order.

*Facts and Procedural History*

{¶2} Piacentino and Cynthia Heinz ("Heinz") formed FDLD Holdings LLC ("Holdings" or "the company") in April 2021 and are both 50 percent owners of the company. Holdings, a Wyoming company registered as a foreign corporation authorized to conduct business in Ohio, is a private equity firm that works to secure partnerships with holding companies that it connects with the company's investors. Holdings is the sole member of FDLD Management LLC ("Management"), a Wyoming company, which is the general partner of several targeted holding limited partnerships.

{¶3} Piacentino and Heinz appointed themselves as the sole members and managers of Holdings. Effective January 1, 2022, Piacentino and Heinz entered into and adopted the current Operating Agreement of FDLD Holdings, LLC (the "Operating Agreement"). The Operating Agreement defines a "Manager" as "any Person designated as a manager of the Company in [the] Agreement or hereafter

appointed as a manager as provided in [the] Agreement but does not include any Person who has ceased to be a manager of the Company."

{¶4} The Operating Agreement invests "Members" and "Managers" with different roles. Specifically, "Members" are tasked with appointing and removing Managers. "Managers" may be removed "for Cause" which is defined to include the commission of a felony or act of dishonesty and acts "intended to materially harm [Holdings]." "Material Transactions" must be approved by a "Vote of the Members." Dissolution of the company would be a "Material Transaction."

{¶5} On the other hand, Managers manage the company's "business and affairs" and are "vested with complete management and control of all the affairs of the company" including "effect[ing] any dissolution" of the company. In matters that require the Majority Vote of the Managers, Managers may submit matters to which they have come to a deadlock to the Advisory Board to render a "final, binding recommendation on such matter."

{¶6} The Operating Agreement does not specifically outline a mechanism to be used when a dispute arises between Members, but a waiver provision provides as follows:

> The observance of any term of this Agreement may be waived (either generally or in a particular instance, and either retroactively or prospectively) only with a Vote of the Members and provided further that any provision hereof may be waived by any waiving party on such party's own behalf, without the consent of any other party. Notwithstanding the foregoing, the observance of any term of this Agreement may not be waived with respect to a Member without the

written consent of such Member unless such waiver applies to all Members in the same fashion[.]

**{¶7}** Over time, Piacentino and Heinz's working relationship deteriorated significantly. According to Heinz's July 30, 2024 affidavit, on October 11, 2023, a portfolio company terminated its service agreement with the company "immediately" and "for cause" and stipulated in the termination email that any additional communication between the companies be directed through Heinz. As a result, Heinz requested that the Advisory Board intervene and place Piacentino on a temporary injunction of no less than 30 days "to prevent him from engaging in the actions that caused Holdings to lose a client." However, the Advisory Board was not able to meet and, accordingly, no action was taken.

**{¶8}** For his part, Piacentino contends that Heinz: (1) improperly held and retained 300,000 shares of stock in one of the target holding portfolio companies, OptiFuel Systems, LLC ("OptiFuel"), (2) improperly served as a director or officer of OptiFuel, (3) permitted her personal friend, Seymond Narosov ("Narosov") to access the company's confidential information and records, and (4) improperly prevented Piacentino from having full administrative access to the company's accounts and records.

**{¶9}** On November 27, 2023, Piacentino provided notice that he was exercising the deadlock provisions outlined in the Operating Agreement and requested that the advisory board be convened in order to address his four

grievances. Piacentino outlined the conflicts and asked the Advisory Board to: "(i) remove [Heinz] as a Manager of Holdings and of FDLD Management, LLC; (ii) direct [Heinz] [to] not hold herself out as a Manager of Holdings or FDLD Management; and (iii) not take or purport to take action or execute documents on behalf of Holdings and or FDLD Management."

{¶10} Heinz, likewise, requested a meeting of the advisory board to assist her and Piacentino on several matters relating to the company. Most notably, she requested that the Advisory Board remove Piacentino as a Manager of Holdings. Accordingly, both Managers invoked the deadlock provision to request the Advisory Board remove the other Manager.

{¶11} The virtual meeting of the Advisory Board was conducted on December 11, 2023. During the meeting, Heinz, Piacentino, and Piacentino's counsel provided documentation, evidence, and arguments in support of their positions.

{¶12} On December 13, 2023, the Advisory Board issued its recommendations to Piacentino and Heinz as follows, in relevant part: (1) FLDL shall be dissolved; (2) Piacentino is removed as Manager until the dissolution of the company with Piacentino becoming a silent 50% partner; (3) The 300,000 shares of OptiFuel at issue belong to the partnership; (4) Piacentino signs documents showing his agreement to not initiate contact with the company's portfolio companies or current or potential investors in the company's portfolio companies; (5) A no-

contact agreement shall be in place between Heinz and Piacentino except as required to conduct normal business and the winding up of the company; (6) Piacentino and Heinz file non-disparage agreements; (7) Narasov will immediately cease to act as a representative of the company; and (8) Heinz will take a monthly salary until the time that the company is dissolved.

{¶13} According to Heinz's affidavit, Piacentino immediately disregarded the Advisory Board's binding resolution and continued to hold himself out as a Manager of HDLD. Specifically, Piacentino removed large sums of money from the company's accounts and persisted in representing himself as Manager of Holdings. Piacentino claims the Advisory Board lacked the ability to remove him as a Manager, despite the parties each requesting the Advisory Board remove the other as Manager. Conversely, Piacentino contends that Heinz is improperly representing herself out as the sole Manager of the company and lacks the authority to take actions to dissolve the company as instructed by the Advisory Board.

{¶14} On January 17, 2024, Piacentino filed a complaint against Heinz and Holdings alleging several counts of breach of contract, and unjust enrichment. He requested declaratory relief, preliminary and permanent injunctive relief, specific performance, compensatory damages, punitive damages, and attorney's fees.

{¶15} Specifically, with respect to his request for declaratory relief, Piacentino requested a judgment declaring the Advisory Board's recommendations regarding management and dissolution of Holdings to be null and void and without

authority and effect. However, he asked that the Advisory Board's recommendations that 300,000 shares of OptiFuel belong to and are owned by Holdings and not Heinz and that Narosov be precluded from having involvement in Holdings are effective and binding. Finally, he requested the court declare him to still be a Manager of Holdings.

{¶16} In his request for specific performance and injunctive relief, Piacentino alleged that he is entitled to an order of specific performance: (1) compelling Heinz and FDLD to comply with the Advisory Board's recommendations transferring the 300,000 shares of OptiFuel from Heinz to FDLD and precluding Narosov from any involvement in the company; (2) precluding Heinz and FDLD from enforcing the Advisory Board's recommendations including the dissolution of the company, the no contact and non-disparagement requirements, and the payment of a salary to Heinz as a Manager of the Company; and (3) requiring that Heinz and the company reverse or cure all actions taken to effectuate the Advisory Board's alleged unauthorized recommendations, including any actions taken to effectuate the dissolution of the company, the removal of Piacentino as a Manager of Holdings, the no contact and non-disparagement requirements, and the payment of a salary to Heinz.

{¶17} On July 16, 2024, Piacentino filed a motion for a temporary restraining order and preliminary injunction prohibiting Heinz and the company from: (1) treating Piacentino as if he was not a Manager of the company; (2) taking action on

behalf of the company without the input and consent of Piacentino; (3) limiting Piacentino's access to the company's financial information and accounts; (4) making statements indicating that Piacentino is not a Manager of the company; and (5) taking any action to dissolve the company. That same day, Piacentino filed an affidavit in support of his motion. On July 30, 2024, Heinz and Holdings filed their memorandum in opposition to Piacentino's motion for a temporary restraining order and preliminary injunction.

{¶18} On August 1, 2024, Piacentino filed an emergency motion requesting that the trial court rule on his motion for a temporary restraining order without further briefing. In support, Piacentino alleged that on July 31, 2024, Heinz and Holdings issued a notice to investors requesting that the investment companies remove Holdings as a general partner and retain a company wholly owned by Heinz. The following day, Heinz and the company filed a memorandum in opposition to Piacentino's emergency motion.

{¶19} On August 12, 2024, the parties appeared for a hearing where they presented arguments regarding Piacentino's motion for a preliminary injunction. That same day, the magistrate filed a magistrate's decision denying Piacentino's motion for a preliminary injunction. In his decision, the magistrate noted that the court has been "given inconsistent positions from [Piacentino] regarding the timeframe in which the injunction should be decided." The magistrate noted that both parties requested additional time for a decision and yet, Piacentino then filed a

motion seeking an "immediate decision" on August 1, 2024, yet filed additional briefing on August 8, 2024.

{¶20} On August 26, 2024, Heinz and Holdings filed an objection to the Magistrate's decision for the purposes of clarification only. Specifically, Heinz and Holdings sought to clarify that their request for the court to dismiss Piacentino's unjust enrichment and declaratory judgment claims are not moot or withdrawn.[1] Heinz and Holdings specifically stated that they "do not object to any finding in the Decision relating to [Piacentino's] Motion for a Preliminary Injunction." (Emphasis sic.)

{¶21} That same day, Piacentino filed his objections to the magistrate's decision. Piacentino raised five objections to the magistrate's decision. First, Piacentino alleged that despite the "emergent nature of a request[] for a temporary restraining order" the magistrate did not consider Piacentino's motion for the order. He further alleged that the magistrate did not hold a hearing on Piacentino's motion for a preliminary injunction. Second, Piacentino argued that the magistrate erred by finding that because Piacentino sought to remove Heinz as the Manager of the company, the Advisory Board had the authority to remove any Manager of the company. Third, Piacentino objected to the magistrate's conclusion regarding waiver on the basis that it allegedly improperly added language to the Operating

---

[1] At the hearing held on August 12, 2024, defendants made an oral motion to dismiss a previously filed order to stay or dismiss the complaint on the basis of a case predicated on the same facts that had been filed in Texas.

Agreement and found that Piacentino waived the new language. Fourth, Piacentino objected to the magistrate's finding that Piacentino would not be irreparably harmed if no injunction was issued. Finally, Piacentino raised an objection to the magistrate's finding that Piacentino "has not shown that overriding the parties' chosen method of determining who should be a manager would harm the investors."

{¶22} The trial court filed its judgment entry ruling on the magistrate's decision on October 2, 2024. First, the trial court found defendants' objection that the oral withdrawal of their motion to dismiss did not include the requests to dismiss Piacentino's unjust enrichment and declaratory judgment claims to be well taken. The trial court referred that matter back to the magistrate to address the defendants' motion to dismiss Piacentino's claim for unjust enrichment and declaratory judgment in a separate decision.

{¶23} However, with respect to Piacentino's objections, the trial court overruled each of his objections and adopted the magistrate's decision. Accordingly, the trial court concluded that Piacentino's request for a preliminary injunction was denied.

{¶24} Piacentino filed a notice of appeal. He raises a single assignment of error for our review.

**Assignment of Error**

**The trial court erred in weighing the preliminary injunction factors in order to deny Plaintiff's motion for a preliminary injunction.**

{¶25} In his assignment of error, Piacentino argues that the trial court erred by weighing the factors in a manner that denied his motion for preliminary injunction. He argues that he satisfied each of the elements and that the trial court erred by concluding otherwise.

{¶26} However, as a preliminary matter, we address whether the trial court's order denying the preliminary injunction was a final, appealable order.

{¶27} "Appellate jurisdiction of Ohio's courts of appeals is limited." *Mill Creek Metro. Park Dist. Bd. of Commrs. v. Less*, 2023-Ohio-2332, ¶ 8, 172 Ohio St.3d 24. "Article IV, Section 3(B)(2) of the Ohio Constitution provides that the appellate courts have jurisdiction to review final orders and judgments." *Crown Servs., Inc. v. Miami Valley Paper Tube Co.*, 2020-Ohio-4409, ¶ 13, 162 Ohio St.3d 564.

{¶28} "Ohio law permits the appeal of an order granting [or denying] a preliminary injunction only if certain conditions are met." *Ohio Equity Fund for Housing Limited Partnership XXVIII v. Irvin Cobb Manager, Inc.*, 2025-Ohio-1714, ¶ 13 (10th Dist.). For a judgment regarding a preliminary injunction to be final and appealable, it must meet the requirements of R.C. 2505.02 and Civ.R. 54(B). *Id.*, citing *Nnadi v. Nnadi*, 2015-Ohio-3981 (10th Dist.). The categories of a final order are defined by R.C. 2505.02, which provides, in relevant part:

> (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

. . .

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

(R.C. 2505.02(B)(4)).

{¶29} "An order satisfies R.C. 2505.02(B)(4)(a) if 'there exist[s] nothing further for the trial court to decide with respect to the provisional remedy.'" *R.L.R. Investments LLC v. Cross Street Partners LLC*, 2024 WL 3282016, *2, quoting *In re Special Docket No. 73958*, 115 Ohio St.3d 425, 2007-Ohio-5268, ¶ 29.

{¶30} With respect to R.C. 2505.02(B)(4)(b), an appealing party generally has a "meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action" unless the appealing party is able to establish that "'the proverbial bell cannot be unrung and an appeal after final judgment on the merits will not rectify the damage' suffered by the appealing party." *State v. Muncie*, 91 Ohio St.3d 440, 451 (2000), quoting *Gibson-Myers & Assocs. v. Pearce*, 1999 WL 980562, *2 (9th Dist. Oct. 27, 1999).

{¶31} Piacentino argues that the order denying his request for a preliminary injunction is a final appealable order on the grounds that, in the absence of the

preliminary injunction, he will suffer damage that will not be able to be adequately rectified through monetary damages alone. Specifically, he argues that he will be irreparably harmed if the dictates of the Advisory Board's resolution are followed and Heinz is able to continue holding herself out as the sole Manager of Holdings and takes steps to dissolve the company.

{¶32} However, here, Piacentino's complaint ultimately seeks a permanent injunction in addition to declaratory relief, specific performance, compensatory damages, punitive damages, and attorney's fees. "[C]ourts have found that '[i]t is well established that the granting of a temporary or preliminary injunction, in a suit in which the ultimate relief sought is a permanent injunction, is generally not a final appealable order.'" *Jacob v. Youngstown Ohio Hosp. Co., L.L.C.*, 2012-Ohio-1302, ¶ 24 (7th Dist.), quoting *Obringer v. Wheeling & Lake Erie Ry. Co.*, 2010-Ohio-601, ¶ 18 (3d Dist.), citing *Hootman v. Zock*, 2007-Ohio-5619, ¶ 15, quoting *Woodbridge Condominium Owners' Assn. v. Friedland*, 2004-Ohio-14, ¶ 4 (11th Dist.). *See Bettman v. JDH Bldg. Grp., LLC*, 2024-Ohio-1092, ¶ 7 (12th Dist.). ("A preliminary injunction is a provisional remedy that is considered interlocutory, tentative, and impermanent in nature.") Accordingly, this fact weighs against the finding that the trial court's order denying the preliminary injunction is a final appealable order.

{¶33} Further, despite Piacentino's arguments to the contrary, he would be entitled to monetary damages for any loss sustained from the denial of his motion

for a preliminary injunction. *See Bettman* ("Generally, where a party would be entitled to monetary damages for any loss suffered from a preliminary injunction, there is no right to an immediate appeal from a ruling on a preliminary injunction."). Here, Piacentino would be entitled to monetary damages for economic loss sustained, if any, from the denial of his request for a preliminary injunction. Indeed, in response to Piacentino's stated concern that possible mismanagement of the company by Heinz could result in economic harm to him, the trial court noted that "money damages could compensate [Piacentino] for any mismanagement." Critically, Piacentino has not established that a possible future award of monetary damages would not amount to a "meaningful or effective remedy." Further, "because any losses to [Piacentino] can be remedied by money damages at the conclusion of the case, so too can any losses that [he] may incur during the pendency of the case." *See Wells Fargo Ins. USA Servs., Inc. v. Gingrich*, 2012-Ohio-677, ¶ 14 (12th Dist.).

{¶34} Importantly, "[t]he purpose of a preliminary injunction is to preserve the status quo of the parties pending a final adjudication of the case on the merits." *Battelle Memorial Inst. v. Big Darby Creek Shooting Range*, 192 Ohio App.3d 287, 2011-Ohio-793 ¶ 21 (12th Dist.). However, there is a strong argument that the relief sought in the preliminary injunction, namely that he be named a Manager of Holdings, is at odds with the binding resolution of the Advisory Board and would not maintain the "status quo" that Piacentino claims to seek.

{¶35} In conclusion, after reviewing the record and the totality of the circumstances present here, we find that the trial court's denial of Piacentino's motion for a preliminary injunction still affords Piacentino a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties. Accordingly, the trial court's decision and judgment entry does not satisfy the requirements of R.C. 2505.02(B)(4) and Piacentino has not established his right to immediately appeal from the trial court's order denying his request for a preliminary injunction. Accordingly, we dismiss the appeal for lack of a final, appealable order.

*Conclusion*

{¶36} For the foregoing reasons, Piacentino's appeal is dismissed for lack of a final, appealable order.

**Appeal Dismissed**

**WALDICK, P.J. and WILLAMOWSKI, J., concur.**

Case No. 9-24-51

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, the instant appeal is dismissed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

_____
Mark C. Miller, Judge


_____
Juergen A. Waldick, Judge


_____
John R. Willamowski, Judge

DATED:
/jlm